Stephenson, J.
 

 The parties will be referred to in this opinion as they appeared in the trial court, namely, Katherina Kellner, administratrix,' as plaintiff, and Frank G. Greer, as Dr. Greer, except where if is necessary to refer to them as plaintiff in error and defendant in error.
 

 Plaintiff in error naturally claims that the trial court did not err in directing a verdict, and defendant in error claims it did. In this contention we come squarely to the proposition, considering plaintiff’s evidence in its most favorable light to her, could reasonable minds have reached a different conclusion therefrom? This issue necessitates a reading of the record by this court, which in this particular case is not an onerous task, as the record is remarkably brief.
 

 Plaintiff in error claims that three questions involving the law of negligence are manifest herein, viz.:
 

 First. Can the operator of an automobile, who proceeds at a lawful rate of speed on his own side of the highway, be charged with any actionable negligence when he slows down, pulls off the highway to the right and still cannot avoid a collision with an oncoming automobile that suddenly skids across the highway in front of him?
 

 Second. Is there a legal duty on the operator of an automobile, lawfully proceeding on his own side of the highway, to successfully avoid a collision with an oncojning, skidding automobile?
 

 
 *73
 
 Third. "Where the driver of an automobile on a slippery pavement, gets off the improved portion of the highway to his right onto an improved berm, is not his conduct in leaving that position and endeavoring to get back onto the highway, which causes him to skid across the highway and into the path of an oncoming vehicle, such contributory negligence, as a matter of law, as precludes recovery on his part against the driver of the oncoming vehicle?
 

 Defendant in error counters with three questions, viz.:
 

 First. Was it for a jury to say whether or not defendant used ordinary care after he saw decedent’s car zig-zagging and skidding on the highway?
 

 Second. Was it for a jury to say whether the driver of the car in which decedent rode did or did not act as a reasonably prudent man, in not driving with one wheel off the road and three wheels on the road?
 

 Third. Was it for a jury to say whether the proximate cause of the death of decedent was the conduct of the defendant or the driver of the car in which decedent rode?
 

 We shall not indulge technical niceties in this case, but deal with it as we find it. If under the law there was evidence which should have gone to the jnry, then the court should have submitted it to the jury, and his failure to do so constituted reversible error. On the other hand, if under the law there was nothing for the jury to consider, it was equally the duty of the trial court to arrest the case and direct a verdict.
 

 We are not as much concerned with the law of this case as we are with the facts, as it is one of those cases where the facts determine the law.
 

 There is not much dispute as to the facts.
 

 We will use the word “car” instead of “automobile,” as it is much shorter and in this day and age means the same thing.
 

 
 *74
 
 Whenever the front end of a car traveling in a straight line comes in contact with the right side of a car, that immediately before the impact was traveling in an opposite direction, there is something wrong somewhere. The defendant, Dr. Greer, immediately prior to the collision, was driving along the highway in the open country at a speed of from 30 to 35 miles an hour. He had a right to that speed if he wanted to'use it. He was on the right side of the highway where he had a right to be. He was familiar with the highway, as was the driver of decedent’s car, who by the way was decedent’s seventeen-year-old son. Dr. Greer had been driving a car for fifteen years, and decedent’s son had been driving for one year and had not driven much, according to his own testimony, unless his father and mother were with him.
 

 The following facts are gleaned from the testimony of Fred Kellner, the driver of decedent’s car:
 

 On this night, he said, while driving 30 or 35 miles an hour, he came to a point where there was a “slippery when wet” sign, so he slowed down to 20 or 25 miles an hour, when the right rear wheel of his car slipped off the pavement and traveled 4 or 5 feet, and while traveling that distance he saw Dr. Greer’s car coming toward him and he was trying all the while to get his car back on the pavement, with Dr. Greer’s car about 300 feet away. In his endeavor to get back on the pavement he lost control of the car and it skidded across the road to the distance of about 65 feet, and as his car was about to stop it came in collision with Dr. Greer’s car on Dr. Greer’s side of the highway at a point known as Entrikin’s Drive. After the cars came to a stop, decedent’s car.was partially off the highway on Dr. Greer’s side of the highway, at the Entrikin Drive, headed southeast, and Dr. Greer’s car was likewise off the highway, headed north. The front end
 
 *75
 
 of Dr. Greer’s car struck the right front door of decedent’s car.
 

 Dr. Greer was called for cross-examination and testified that on the night in question he was driving north on the highway and he saw the lights of the Kellner car as it came around a curve, and when some 100 or 150 feet distant, on its proper side of the road, its lights began to weave; that he took his foot off the accelerator, started to brake the car and pulled over to the right side of the road as far as he could; that the Kellner car continued to weave until it was 15 or 20 feet away, then shot across, broadside; that there was no traffic other than these two cars; that it did not occur to him to turn to the left, and that he turned to the right. Dr. Greer is not exact as to the location of the cars with reference to the paved highway immediately after the impact, but in a general way his testimony agrees with that of the driver of decedent’s car. Carl Kellner, a brother of Fred Kellner, the driver of decedent’s car, who was riding with Fred at the time of the collision, also testified. His testimony was corroborative of that of Fred Kellner and Dr. Greer.
 

 John 0. Entrikin, who resided at the point where the collision took place, testified from a sketch or plat prepared by counsel. As the sketch or plat was not in evidence, his testimony was not helpful further than that he located both cars shortly after the collision as being partly off the highway, on the side on which Dr. Greer was entitled to travel.
 

 Katherina Kellner, widow of John Kellner, deceased, testified as to the age and earning capacity of John Kellner, also gave the number, names and ages of his dependents and the amount of funeral expenses —and that was all the testimony.
 

 Summing it all up, the only complaint plaintiff could make against the defendant in the trial court was his failure to leave the right side of the road, where he
 
 *76
 
 should he, and drive to the left side of the road, where he should not be, in order to avoid collision with decedent’s skidding car. Surely the dictates of ordinary care did not require Dr. Greer to leave a zone of safety and go into a zone of danger to avoid collision.
 

 There is at least a remote possibility that Dr. Greer might have driven to the left and thus avoided the collision; but he was confronted with an emergency. He was not required to judge with superlative nicety. He did the sensible thing. He remained where the law placed him.
 

 Section 6310-17, General Code (110 Ohio Laws, 136), in effect at the -time this cause of action accrued, provided that “ Vehicles shall keep to the right side of the road or highway except” as otherwise provided therein.
 

 Section 6310-18, General Code, provides: “A vehicle meeting another vehicle approaching from the opposite direction shall pass to the right.”
 

 These statutes are penal. The duty to keep to the right is a specific requirement, and one who violates it is not only subjected to a penalty but he is negligent as a matter of law. The command of Section 6310-17 is to the effect that motor vehicles shall
 
 “keep”
 
 to the right side of the road or highway. The word “keep” has some significance. It hints at constancy. It means, as we take it, that drivers of motor vehicles should get on the right side of the highway' as quickly as possible and remain there.
 

 The driver of decedent’s car states that he saw Dr. Greer’s car coming in his direction when one wheel of his car was off the pavement, and that instead of trying to get back on the pavement he could have kept to the right and avoided the collision. It certainly is not a mark of prudence on the part of the driver of a motor vehicle to undertake to pull the wheel of a car, running at a speed of from 20 to 25 miles an hour, from
 
 *77
 
 the berm to a slippery pavement, in the face of a car approaching from an opposite direction, and of which approach he is thoroughly cognizant. This court having found that there is no testimony in the record even tending to establish negligence on the part of Dr. Greer, it is unnecessary to consider the issue of contributory negligence.
 

 Taking-all this testimony and the physical facts, just what was there for the consideration of the jury? When we say physical facts we refer to the points of impact on both cars, their positions immediately after the collision with relation to each other and to the highway.
 

 We have tried hard to imagine a situation wherein, under the law, the driver of a motor vehicle meeting another motor vehicle coming from an opposite direction would be warranted in leaving the right side of the road, where the law gave him the right to travel, and turning to the left side of the road, where the law denied him the right to travel. As yet we have not been able to conceive of such a predicament.
 

 The trial court was right in arresting the evidence and directing a verdict for the defendant, Dr. Greer, at the close of plaintiff’s evidence, and the Court of Appeals was in error in reversing such judgment.
 

 Judgment
 
 reversed.
 

 Weygandt, C. J., Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.