ALFRED PETERSON, APPELLEE, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, APPELLANT.

FILED MARCH 16, 1917.  No. 19172.

Appeal: CONFLICTING INSTRUCTIONS. It is erroneous to state to the jury by instructions that certain allegations of negligence set forth in the petition are to be considered by it in making up its verdict, and also to tell the jury that such allegations should be disregarded by them. Unless from the whole record it is apparent the jury were not misled thereby, the error must be considered prejudicial, since it is impossible to know which of the directions it followed.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*Crofoot, Scott & Fraser*, for appellant.

*Jefferis & Tunison* and *Hollister & Cunningham*, contra.

LETTON, J.

Action for personal injuries occurring by the plaintiff being knocked down and run over by an engine upon a railroad bridge. Plaintiff recovered a verdict and judgment for $10,000. Defendant appeals.

The plaintiff is a common laborer. Shortly before the accident he had been working on a farm in Nebraska. He went to an employment agent in Omaha, who directed him to go to Neola, Iowa, where he could procure employment on a stock farm belonging to one Hubbard. He arrived at Neola at about half past 5 o'clock in the evening of December 2, 1912. The accident occurred about 6: 25 P. M. He testifies that he inquired of the lady in charge of the station, and she directed him to Hubbard's residence. The evidence shows that for a short distance west of the station the railroad track and the railroad bridge crossing a small stream were very generally used by pedestrians. The bridge was floored and a hand-rail erected on both sides. The substance of plaintiff's testimony is as follows: He walked westward after he crossed the bridge until he met a passenger train coming in. Thinking he was mistaken in the direction, he turned and walked back toward the station. A little before he reached the bridge he heard a whistle; at the switch stand, which is east of the bridge about 35 feet, a man, whom he took to be a brakeman, was standing; that he told him he was looking for Mr. Hubbard, and that this man told him that Hubbard was in the stock-yards (which were north and west of this point), and said for him to go over the bridge to the yards. He then looked eastward, saw a train or car standing in front of the depot on the passing or switch track, but it had no lights. As he went to the stock-yards he stopped within one or two feet of the bridge and

looked back to see if the train was coming, but it was not moving, and he saw no headlight; when he reached about the middle of the bridge he was struck in the back and knocked down by an engine. It was dark at the time. He heard no noise and had no knowledge that the train was coming, or he would have jumped off the bridge. It is shown that his left leg was cut off, and that the heel and part of his right foot were crushed and afterwards removed. He remained in one hospital for about seven months, and about a year afterwards he was taken to another hospital, remaining there many months and suffering great pain. The bridge had been used as a pathway for many years to the knowledge of defendant's employees, a beaten track leading to and from it. There were no signs or notices forbidding persons to use the same. The bridge at that time was 13.2 feet in width, and there was a space of $16\frac{1}{4}$ inches between the engine and the hand-rail on the side of the bridge. The west end of the station building is 298 feet east of the east end of the bridge. The main line is the first track south of the station platform, and the passing track on which the engine and freight train stood is the next one south.

Plaintiff testifies he could see the station when he turned and looked back before going onto the bridge, and also saw a car on the south passing track. The switch point is 35 feet east of the bridge. It is shown that the engine was uncoupled from the train and moved forward on the side-track at the rate of two or three miles an hour until the switch stand was reached. After the switch was opened it moved forward on the bridge at about the same rate for the purpose of clearing the switch, so as to back onto the main line to be used in moving cars at the rear end of the train. There is a slight curve in the track, so that the beam from the headlight would be directed north and west of the bridge until after the engine emerged from the side-track. Neither the engineer nor fireman saw the plaintiff, and they did not know he was on the track until they heard him scream. The engine was stopped immediately, and

he was found lying on the bridge toward the south end of the track between the tank and engine. At the rate the train was moving, according to the testimony, about eight or ten seconds elapsed between the time the headlight shone on the track on the bridge and the time the plaintiff was struck. There is a direct conflict between the testimony of plaintiff and that of a number of witnesses for defendant as to whether there was a headlight burning upon the engine and as to whether any signals were given. Although he says he heard no whistle, we think it is established that two short whistles were blown before the engine moved, as a signal to a towerman stationed about 600 feet east of the bridge, who answered by a signal light, allowing the train to go upon the main line. The only direct testimony that no headlight was burning is that of the plaintiff, though two other witnesses say they did not notice it. The positive testimony of the engineer, fireman, conductor, two brakemen, the towerman, and that of two farmers, who were at the stock-yards at the time, is that the headlight, which was an oil burner, was burning before the accident occurred, and at the time plaintiff was struck. In such a state of the evidence, where there is so much doubt as to the existence of negligence on the part of defendant, it is especially needful that the instructions be clear and unequivocal.

Since the evidence is clear and undisputed that the defendant company had permitted the bridge to be used as a passageway for pedestrians for many years, and this use was well known to its agent and employees, the plaintiff was not a trespasser, but occupied the status of a licensee. This being the case, defendant was bound to use ordinary and reasonable care to see that a traveler crossing the bridge was not injured by its negligence.

The petition alleges, in substance, that the defendant invited the plaintiff and the public generally to use the bridge as a public way, and that the accident to plaintiff was, among other things, due to "negligence of said defendant in keeping and maintaining said bridge as a

passageway for the use of pedestrians without sufficient space between the tracks and railings thereof," and its negligence in failing "to provide any signal or watchman at said bridge to give people warning that were using the same."

Instruction No. 2 given by the court is as follows: "You are instructed that the burden of proof is upon the plaintiff herein to establish, by a preponderance of the evidence, all of the material allegations of his petition, which are not admitted by the defendant's answer, before he will be entitled to recover in this action. That is to say, it is for him to establish:

"(1)  That defendant was negligent in one or more of the particulars with which it is charged in said petition, namely, that defendant was negligent in maintaining the bridge in question as a public passageway for the use of pedestrians without sufficient space between the tracks thereon and the railings thereof to afford reasonable safety for pedestrians to pass over said bridge at the same time the defendant's engine and tender were passing over the same, and, under such circumstances, in the defendant running its engine and tender over and upon said bridge while plaintiff was thereon; or that defendant was negligent in operating its engine and tender over or upon said bridge while plaintiff was thereon, without giving any signal or warning of its approach, and striking and injuring plaintiff at a time when plaintiff was unable to protect himself, and when defendant's servants in charge of said engine and tender saw, or by the exercise of reasonable care should have seen, the plaintiff in time to avoid injuring him; or that the defendant was negligent in failing to provide some signal or watchman stationed at said bridge to warn persons of the danger incurred in crossing said bridge.

"(2)  That such negligence of the defendant was the proximate cause of the plaintiff's injuries, while the plaintiff himself was in the exercise of ordinary care for his own safety; but, on the question of ordinary care on the part of the plaintiff, it is sufficient, in the first in-

stance, if the evidence adduced on behalf of the plaintiff does not disclose negligence on his part directly contributing to the happening of the accident complained of; and,

"(3)   That plaintiff has sustained some damages by reason of said injuries and the amount thereof.

"Should you find that plaintiff has established each and all of the foregoing propositions by a preponderence of the evidence, and should you further find from the evidence that plaintiff was not guilty of contributory negligence, as hereinafter defined, then plaintiff would be entitled to recover such damages as the evidence shows he has sustained as the natural and direct result of the defendant's said negligence, and your verdict should be for the plaintiff accordingly.

"Should you find, however, that plaintiff has failed to so establish any one or more of the foregoing propositions, or should you find that the evidence upon any one or more thereof be evenly balanced, or that it preponderates in favor of the defendant, or should you find from the evidence that plaintiff himself was guilty of contributory negligence, then plaintiff will not be entitled to recover herein, and your verdict should be for the defendant."

The court in instruction No. 1 restated all the allegations of negligence in the petition. Instruction No. 2 states that it is for plaintiff to establish that the "defendant was negligent in *one or more* of the particulars with which it is charged in said petition." The first charge made is that defendant was negligent in maintaining the bridge without sufficient space between the tracks and the railings to allow pedestrians to pass over the bridge at the same time while the engine and tender was passing. Another charge is that the defendant "was negligent in failing to provide some signal or watchman stationed at said bridge to warn persons of the danger incurred in crossing said bridge." By the third instruction the jury were told that they must be satisfied "that the defendant was guilty of negligence in *one or more* of the particulars with which it is charged in the petition,

and which are more specifically set forth in the first sub-division of instruction number 2 herein."

These instructions permit a verdict to be rendered against the defendant merely for the reason that the bridge as constructed was not wide enough to permit foot passengers and engines or trains to pass over it at the same time with safety. This is not a correct statement of the law. The fact that the defendant suffered or permitted the use of this bridge for foot passengers for so long a time implies a license to use the same, but it did not impose upon it any duty to change the construction of the bridge. The bridge was apparently absolutely safe for the purposes of the railroad company, and with due regard to the fact that a narrow railroad bridge, even though planked over, is always a place of danger, the bridge was apparently perfectly safe for foot passengers except when a train or engine was crossing. The license to the public was a license to use the bridge in the condition as it then stood, and no duty was imposed upon the defendant to make the bridge sufficiently wide so that foot passengers and railroad trains could pass over it at the same time. And so with the allegation that it was negligence to fail to keep a watchman at the bridge, the evidence did not establish such a constant use of the bridge by pedestrians as to impose such a duty upon defendant.

After reciting these and the other allegations of negligence in the petition, the court says: "Should you find that the plaintiff has established each and all of the foregoing propositions by a preponderance of the evidence, and should you further find from the evidence that plaintiff was not guilty of contributory negligence, as hereinafter defined, then plaintiff would be entitled to recover such damages as the evidence shows he has sustained as the natural and direct result of the defendant's said negligence, and your verdict should be for the plaintiff accordingly." It is true that by the eleventh and twelfth instructions the jury were told that the railroad company would not be liable for injuries

occurring to a licensee merely and solely because of the narrowness of the space between the track, or the engine or cars upon the track, and the railings on the bridge, and that there was no duty upon it to maintain a watchman at the bridge, but it is impossible to tell whether the jury followed these or the first, second and third instructions. It was error to give such conflicting instructions, which tend to confuse the jury. *Wasson v. Palmer,* 13 Neb. 376; *School District of Chadron v. Foster,* 31 Neb. 501; *Chicago, B. & Q. R. Co. v. Oyster,* 58 Neb. 1; *Williams v. McConaughey,* 58 Neb. 656; *Reed v. State,* 75 Neb. 509, 521; *Bryant v. Modern Woodmen of America,* 86 Neb. 372.

In the state of the pleadings and evidence in this case, it is especially important that the instructions be clear and unequivocal. In a number of cases we have held that the giving of conflicting instructions, although erroneous, is not always prejudicial, and we adhere to these views. Whether prejudicial depends upon the circumstances in each particular case. The main thing is that the reviewing court be satisfied that the defeated party has had a fair trial of the real issues. Unless it is so convinced, the error must be deemed to be prejudicial. We are of opinion that the rule announced in the cases above cited should be applied and the giving of these conflicting instructions be held to be prejudicial. Upon a retrial only such allegations in the petition and such issues as are supported by evidence should be submitted to the jury.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., not sitting.