DOUGLAS CALLAHAN, ADMINISTRATOR, APPELLANT, v. GATHER F. PREWITT, APPELLEE.

3 N. W. (2d) 435

FILED APRIL 10, 1942. No. 31302.

Morrow & Miller, for appellant.

Frank L. Glebe, Mothersead & York and Lewis F. Shull, contra.

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This action was brought by Douglas Callahan, as administrator of the estate of Otto H. Doerfler, deceased, against Gather F. Prewitt, defendant, for death by alleged wrongful act, under section 30-809, Comp. St. 1929. The jury returned a verdict for the defendant, and plaintiff appeals.

The petition, which was filed January 13, 1940, alleged generally that on December 15, 1939, at about 10 o'clock p. m., Otto H. Doerfler was driving a Dodge automobile east towards Morrill, on highway No. 26 in Scotts Bluff county; that Gather F. Prewitt, defendant, was driving west in a V-8 truck, with semitrailer, with a Wyoming license; that they were approaching a bridge upon said highway about one mile west of Morrill; that Doerfler was driving on the south side of said highway, but the defendant negligently drove his truck to the left of the center of said highway, and

so close to the left or south side of the highway that it was impossible for the automobile driven by Doerfler to pass said truck upon said bridge, and as a result thereof there was a head-on collision, in which Otto H. Doerfler received injuries from which he immediately died.

It is further alleged that the defendant was negligent in the operation\of the truck, in that for some time prior to the collision he was driving said truck to the left or south side of the center of said highway, and failed and refused when approaching Doerfler to turn said truck to the right side, and failed to yield one-half of said highway to the said Doerfler, or yield sufficient space to permit Doerfler to drive past said truck upon said bridge, and that said negligence of the defendant was the direct and proximate cause of said collision and of the death of the said Otto H. Doerfler.

The petition further alleges that Otto H. Doerfler died intestate, a resident of Scottsbluff, and on January 9, 1940, plaintiff, Douglas Callahan, was appointed administrator of his estate by the county court; that at the time of his death Otto H. Doerfler was 42 years of age, in good health, and engaged in business in Scottsbluff, earning approximately $400 a month. The deceased left surviving him his widow, 40 years of age, and five minor children, all of whom were dependent upon him for support. It is alleged that, because of the death of the said Otto H. Doerfler, his next of kin have been deprived of his earnings and support, and have been damaged in the sum of $50,000, and the automobile driven by Doerfler, valued at $600, was so badly broken and damaged in the accident that it was worthless.

The amended answer was, first, a general denial, and then specifically denied that Doerfler was in good health, but on the contrary alleged that he was in poor health, and that he had previously suffered a loss of vision of one of his eyes; denied that said Doerfler was earning $400 a month at the time of his death, and alleged that he had no earning capacity at that time; denied that the automobile driven by Doerfler was of the reasonable value of $600.

For further answer defendant alleged that said accident

was caused solely by acts of negligence of the said Otto H. Doerfler; that the defendant was without fault; that the proximate cause of the alleged damages to the plaintiff was not through any negligence of defendant, but that said Doerfler was negligent in that he was driving his automobile at an excessive rate of speed; that he did not have his car under proper control; that he failed and neglected to observe the defendant and his truck, as he should have done and could have done; that said Doerfler was negligent in that he failed to keep on the right side of said highway; that he drove on the north side of said highway just before said collision, thereby forcing defendant to pull toward the center of said highway in an attempt to avoid a head-on collision with said automobile; that said Doerfler immediately prior to said accident was not keeping a proper lookout; that he was not in proper condition to drive said car at the time of the accident, for the reason that he had defective eyesight, and for the further reason that because of the use of intoxicating liquors his mental faculties had been dulled and his judgment impaired. Wherefore, defendant prays that the petition of plaintiff be dismissed with prejudice.

The trial of the cause commenced on December 17, 1940, and on December 21 was submitted to the jury, and after three hours' deliberation the jury returned a verdict, finding for the defendant.

The plaintiff sets out some 32 errors relied upon for reversal, many of them relating to the giving and refusing to give certain instructions. Some of the errors relate to the improper admission of *res gestæ* evidence, and these as well as certain other errors will be discussed.

The testimony shows that on the night of the accident it was cold and windy, the wind blowing from the west. It was a very dark night, and the highway was dry at this particular place, according to the testimony of the officers. Defendant Prewitt was driving a semitrailer-truck, and he had eight tons of baled hay on the trailer, and was going west at about 30 miles an hour. The Doerfler car was coming from the west towards the east. The defendant testified

that Doerfler was coming very fast, but did not fix exactly the speed at which he was coming, but one witness said the Doerfler car flashed by their car, and one said to the other, "He can't do that to us," and so they (Merle Beverness and Donald Nash) took out after him to try and catch up with him; that they tried for several miles, and could not overtake him, and that they were just about 300 yards behind him at the time the accident happened. The collision occurred on a bridge which is one and a quarter miles west of Morrill.

Sheriff Morgan testified that he was called to the scene of the accident, and picked up the county attorney, Frank Glebe, and went right out; that Cecil Rhoades, a policeman from Scottsbluff, and two state highway patrolmen, Smith and Brown, were there, also many others, when he arrived at about 10:55 p. m.

The sheriff gave the measurements of this bridge, as follows: 32 feet 9 inches long, 20 feet 4 inches wide; that the center white strip is painted across the bridge, and extends down the highway in both directions from the bridge. His measurements indicate that on the bridge this center white strip is off center a few inches at the east end of the bridge, being 9 feet 6 inches from the south side and 10 feet 5 inches to the north rail of the bridge.

Exhibits Nos. 1 to 10 are large, clear photographs, showing the exact situation of the car and the big truck loaded with baled hay on the bridge after the collision. These exhibits show definitely that the truck was proceeding exactly in the middle of the highway across the bridge, with the white strip exactly under the center of the truck, and it was impossible for any car to pass the truck on either side while the truck was crossing this bridge. The Doerfler car was on its proper side of the road when it attempted to go by the truck, and wedged itself into the truck in a head-on collision. The defendant admitted this in the answer he made on cross-examination to question No. 2062: "Q. So, in other words, what you did was to block the road so he couldn't get past you at all without a wreck? A. Yes, it turned out that way."

The defendant contended that when he first saw the Doerfler car they were about 550 feet apart, and Doerfler was driving on the wrong side of the road, but defendant did not pull over clear to the right, or pull over clear to the left of the center line, but continued right down the middle of the road; in other words, it appears that he did the only thing he could do to insure that an accident would occur.

The defendant contends that a motorist suddenly confronted with an emergency requiring instant decision is not necessarily negligent in pursuing a course which deliberate judgment might prove to be wrong, citing *Belik v. Warsocki*, 126 Neb. 560, 253 N. W. 689; *Oakes v. Gregory*, 133 Neb. 407, 275 N. W. 607; *Moses v. Mitchell*, 139 Neb. 606, 298 N. W. 338.

But can this sudden emergency rule be invoked to justify a motorist in violating the law by turning his vehicle to the left of the center of the road in front of an oncoming motor vehicle?

Section 39-1139, Comp. St. Supp. 1941, provides generally that a driver of a vehicle upon highways of sufficient width shall drive the same upon the right half of the highway unless it is impracticable to drive on such side of the highway, except when overtaking and passing another vehicle, and section 39-1141, Comp. St. Supp. 1941, provides that "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible."

This court has said that "Driving an automobile in the center of a public bridge 16 feet wide, which is in a safe condition for travel from one side to the other, thus forcing the driver of an approaching automobile to run his car against a railing to prevent the two vehicles from colliding, is evidence of negligence." *Hook v. Kempf*, 125 Neb. 79, 249 N. W. 89.

"An automobile driver may not violate the rules of the road, and then invoke the doctrine of sudden emergency to relieve himself from liability to another who is injured as a

result of his violation of such rules." *Simonson v. Huff*, 124 Wash. 549, 215 Pac. 49. See, also, *Bolton v. Wells*, 58 N. Dak. 286, 225 N. W. 791.

This rule is concisely stated in *Kelly v. Gagnon*, 121 Neb. 113, 236 N. W. 160, as follows: "Conduct which would otherwise be negligence cannot be excused on the ground that the actor made a mistake of judgment, unless the judgment exercised was that which an ordinarily careful and prudent man would have exercised under the same circumstances." See, also, *Lloyd v. Calhoun*, 78 Wash. 438, 139 Pac. 231; *Hamilton v. Carpenter*, 49 Idaho, 629, 290 Pac. 724; *Mahoning Savings & Trust Co. v. Kellner*, 131 Ohio St. 69, 1 N. E. (2d) 616.

The law is well settled that a party driving an automobile lawfully, upon his proper side of the highway, who observes an approaching car, has no right to assume that the driver of the oncoming car will violate the law in passing. See *Belik v. Warsocki, supra; Bainter v. Appel*, 124 Neb. 40, 245 N. W. 16.

The serious grounds for reversal in this case are founded upon the admission of many statements made by defendant to parties gathered around the scene of the accident, many of which were made over an hour after it occurred.

The defendant himself testified that, while driving, when he first paid attention to the Doerfler car approaching, it swerved from side to side, and he said to his brother, "What in the world is that fool going to do?" No objection was made to this, but it is cited as an example of a proper *res gestæ* statement.

"Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be re-

ceived as testimony to those facts." 3 Wigmore, Evidence (2d ed.) 738, sec. 1747.

But, after the accident, and Doerfler was found to be dead in his car, the defendant talked to many persons, and many of his remarks were admitted over objections.

Harold Smith, of the state highway patrol, testified that defendant told him the man drove like he was drunk. Sheriff Morgan testified to statements that the defendant made nearly an hour after the accident, and over proper objections, touching the res gestæ character, such as this: "He was going west—said he was going west and the car was coming from the west and he thought the car was going to turn north and he pulled over to the south, and met him on the bridge."

"A statement to be admissible as a part of the res gestæ must have been spontaneous and impulsive, and made at a time and under such circumstances as to induce the belief that it was not the result of reflection and premeditation." Tongue v. Perrigo, 130 Neb. 564, 265 N. W. 737. See, also, Suhr v. Lindell, 133 Neb. 856, 277 N. W. 381.

"Spontaneous exclamations, uttered impulsively, and so closely connected with the transaction as to exclude the idea that they were made with deliberation and purpose, are properly admitted as res gestæ evidence." Roh v. Opocensky, 126 Neb. 518, 253 N. W. 680.

In the recent case of Bowers v. Kugler, 140 Neb. 684, 1 N. W. (2d) 299, a judgment was reversed, and we said:

"The ruling of the trial court in the case at bar, in admitting as part of the res gestæ the declaration giving the opinion of the driver of the transport, was prejudicial error."

"Although there are some exceptions, a statement of a mere conclusion or opinion is not ordinarily admissible as a part of the res gestæ, which should be confined to declarations which relate to provable facts. 22 C. J. 469; Field v. North Coast Transportation Co., 164 Wash. 123, 2 Pac. (2d) 672, 76 A. L. R. 1114; 1 Jones, Evidence (4th ed.) 630, sec. 344; Wert v. Equitable Life Assurance Society, 135 Neb. 654, 283 N. W. 506."

Without setting out many other similar statements admitted over objections, we believe that many, if not all, of reported conversations with defendant were statements he made after he had had time to think the matter all over, and to anticipate a possible lawsuit, and certainly he realized the position he was in, and his hearsay statements were clearly objectionable, and it was a prejudicial error to admit them for the jury to consider.

Other alleged errors in giving and refusing instructions are not discussed, as such errors, if any, will doubtless not occur in a second trial.

For reasons stated, the verdict and judgment are set aside and the cause is remanded for a new trial.

REVERSED.