CATHERINE RICKER, A MINOR, BY AND THROUGH FLOYD
RICKER, HER FATHER AND NEXT FRIEND, APPELLANT, V.
GEORGE W. DANNER ET AL., APPELLEES.
68 N. W. 2d 338

Filed February 4, 1955.   No. 33602.

*Mathews, Kelley, Fitzgerald & Delehant* and *Martin A. Cannon, Jr.,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda, William P. Mueller, Mecham, Stoehr, Mecham & Hills, Gross, Welch,*

*Vinardi & Kaufman,* and *Robinson, Hruska, Garvey & Nye,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant seeks to recover damages on account of injuries inflicted on her and disability caused by the collision of an automobile driven by her mother in which appellant was riding as a passenger with a motor vehicle owned and operated by Frank Kravchuk, and a motor vehicle owned by Lloyd J. Marti, maintained and used for family purposes, and operated by his infant son, Douglas W. Marti. Appellant claims the injuries and disability suffered by her were caused by negligence of appellees. The district court at the close of the evidence sustained the separate motion of each appellee to nonsuit appellant and dismissed the case. Her motion for new trial was denied and she prosecutes this appeal.

The cause of action alleged is: That on March 7, 1953, appellant was a passenger in an automobile driven by her mother in a southerly direction on U. S. Highway No. 6 about 2 miles northeast of Gretna in a prudent and careful manner; that vision to the south was obstructed by the crest of a hill which they were approaching; that about 300 feet south of the crest of the hill a large truck' owned by George W. Danner, called Danner herein, was parked within and it entirely occupied the north-bound or east lane of the highway; that it remained in that place for more than 6 hours; that Frank Kravchuk, described herein as Kravchuk, was driving his automobile in a northerly direction on the highway south of the truck; that Douglas W. Marti, hereafter identified as Marti, was driving the automobile of his father Lloyd J. Marti which was owned and was then being used for a family purpose proceeding northward and behind the Kravchuk car; that Kravchuk, followed closely by Marti, while the vision of appellant

and her mother was obscured, drove their respective cars to the left across the center line of the highway, around the Danner truck, and continued in the southbound lane of the highway until the Kravchuk car was about 200 feet south of and in the vision of the car in which appellant was riding and thereby presented the mother of appellant with a sudden emergency at which time she applied the brakes of the car which she was operating in an attempt to avoid a collision with the Kravchuk and Marti cars; that Kravchuk drove his car onto and against the automobile in which appellant was riding on approximately the center line of the highway, and Marti drove the car he was operating onto and against the car appellant occupied near and slightly east of the center line of the highway; and that the collisions occurred about 200 feet north of the Danner truck.

That Danner was negligent in parking his truck on the paved portion of the highway when it was practical to park it on the shoulder; when by so doing he left less than 15 feet of open pavement for other vehicles; when the said vehicle was not so disabled that it could not be moved off the highway; in leaving his automobile parked in the roadway for an unreasonable length of time, for over 6 hours; and in leaving it parked unattended in the roadway near the crest of the hill without posting any warning signs, flags, or flares as required by law.

That appellees other than Danner were negligent in crossing the center line of the highway near the crest of the hill when the roadway was clearly marked with yellow lines forbidding such crossing; in driving on the lefthand side of the highway when the view was obstructed; in failing to turn back into the north-bound lane of the highway in time to avoid a collision when there was ample time to do so; in approaching the crest of the hill on the lefthand side of the road when the view was obstructed; in failing to keep a proper lookout for other vehicular traffic approaching from the

north; in failing to keep the vehicles being operated under proper control; in failing to yield the right-of-way to the car in which appellant was riding and to south-bound traffic on the highway; in driving their motor vehicles from a position of safety into a position of peril without first determining that such move could be safely made; and that the negligence of appellees caused the injuries and disability of appellant and she asked judgment in a stated amount.

Appellees severally denied the allegations of negligence made against them respectively by appellant, and pleaded that the accident was proximately caused by negligence of Matilda Ricker, the driver of the automobile in which appellant was riding, and the more than slight negligence of appellant contributory to the accident.

The manner of the consideration by this court of a case in the situation of the one presented by the record herein has often been stated. Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184.

Danner was the owner of a 1948 K-6 International semitrailer and tractor combination truck. He was operating it in the transportation of a load of salt from Kanopolis, Kansas, to Omaha. The weight of the truck and load was slightly in excess of 20 tons. He was about 2 miles northeast of Gretna on U. S. Highway No. 6 between 9 and 10 o'clock in the forenoon March 7, 1953, starting up a hill when the truck came to an abrupt stop. He could not move it forward or backward. He attempted to put it in reverse to back it off the paved portion of the highway but could not do so because the operating mechanism would not move. He put a reflector at the rear left corner of the truck, another 100 feet north of it on the left side of the highway, and a third one 100 feet south of the truck on the right side of the highway. He did not have tools appropriate to attempt to remedy the condition that disabled the truck. He secured by telephone from Gretna

a mechanic from the shop in Lincoln where the truck was frequently checked and serviced.

The mechanic and Danner found that a bearing in the pinion gear had broken. This had caused the gears to wedge together sufficiently to lock the differential and this condition made it impossible to operate or move the truck. The differential assembly was entirely removed and taken to Lincoln. The parts necessary to make the required repairs could not be secured there. Danner and the mechanic went to Omaha and finally, but not without much difficulty, secured the parts to make repair of the truck. They returned to where it was when it stalled on the highway in the forenoon, but this was sometime near 5 o'clock and the accident complained of had happened.

The differential was removed from the truck before 12 o'clock noon. Its wheels were then free and the truck could have been removed from the highway. It was then in the exact condition that it was when it was towed from the highway soon after the accident, the cause of this litigation. A tow service near but outside Omaha was called by a State Patrolman after the accident. It provided a 2-ton wrecker and the Danner truck was removed from the highway without difficulty. This could have been accomplished within an hour at any time after the differential was removed.

The Paasch farm referred to in the record was west of the highway at the place on the highway where the Danner truck stalled. North of this was a rock-covered driveway from the highway into the Paasch farm and the buildings thereon. The stalled truck was near the first telephone pole on the east side of the highway and south of the farm driveway. The distance from the center of the driveway to the telephone pole was at least 300 feet. The engineer who measured the distance testified it was 381 feet. There was no proof of any other measurement of it. The collision between the Kravchuk car and the Ricker car in which appel-

lant was a passenger, and the collision between the Marti car and the Ricker car took place a short distance north of the driveway into the Paasch farm. The highway was straight and there was a clear view of the truck for a considerable distance. The day was clear. The paved portion of the highway in the vicinity of the parked truck was dry and all the events important to this case happened during daylight.

The stalling of the Danner truck on the highway because of a failure of its mechanism and permitting it to remain there until the removal of the part of its machinery necessary to free its wheels was not negligence. Haight v. Nelson, 157 Neb. 341, 59 N. W. 2d 576. A failure to use ordinary care to remove the truck from the highway within a reasonable time after its wheels were freed and it was possible to do so would be negligence. Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612.

If it be assumed that Danner was negligent in permitting his truck to remain parked on the highway for an unreasonable time after it could have been removed it does not follow under the circumstances of this case that this act on his part was the proximate cause of the accident, the basis of this case. Any negligence of Danner was antecedent negligence which created a condition existing at the time of the collision of the automobiles and was not a proximate cause thereof. The situation created by the parked truck was merely a circumstance of the accident that occurred at least 300 feet beyond it and not its proximate cause. There is in this case no proof of any causal connection between the parked truck on the highway and the injuries inflicted upon and the disability suffered by appellant.

In Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710, it is said: "Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. * * * An efficient

intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. * * * An alleged cause of an accident may sometimes be merely a condition and not the real cause. The activities of inanimate things are usually mere conditions and not causes." See, also, Frerichs v. Eastern Nebraska Public Power Dist., 154 Neb. 777, 49 N. W. 2d 619; Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825; Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117.

The situation considered in Geisen v. Luce, 185 Minn. 479, 242 N. W. 8, was that a passenger car was upset by having turned suddenly to the left to avoid striking the rear of another motor vehicle parked on the highway. The court in deciding the parked vehicle was not the proximate cause of the accident said: "Even though the standing of a car on the highway may be unlawful, yet the wrongful standing cannot be the proximate cause of an accident unless it results from the standing. While such standing may be the occasion or condition, it is not in a legal sense a contributing proximate cause of the accident." See, also, Johnson v. Mallory, 123 Neb. 706, 243 N. W. 872; McMillan v. Thompson, 140 Cal. App. 437, 35 P. 2d 419; Kline v. Moyer and Albert, 325 Pa. 357, 191 A. 43, 111 A. L. R. 406; Johnson v. Angretti, 364 Pa. 602, 73 A. 2d 666.

Appellant and her mother, Matilda Ricker, were traveling on U. S. Highway No. 6 from the north towards the place of the accident about 4 o'clock in the afternoon of the day of the accident at an estimated speed of 45 miles an hour. The car was driven by Matilda Ricker. An automobile driven by Eugene Scheef was traveling in front of them a distance of about 150 feet. There was a place in the highway north of the driveway into the Paasch farm, mentioned above, from where a traveler could not see the part of the highway where

the truck was parked or where the collision occurred but from two or three car lengths north of the driveway there was a clear view towards the south to and far beyond where the Danner truck was parked. There was a yellow line east of but near the center line of the paved portion of the highway extending south of the parked truck to the north a considerable distance beyond the Paasch driveway.

When the driver of the Scheef car was north of the driveway but could see to the south he saw two automobiles and a truck proceeding north in the west lane of the highway. The car nearest him was about six car lengths south of him and it was starting to move into the east lane. The second car and the truck were in the west lane and the truck was immediately west of the stalled truck. The driver of the Scheef car firmly applied the brakes on it, slowed down considerably but did not come to a dead stop, turned to the west so that the west side of his car was on the right shoulder of the highway, and continued south past the approaching cars and truck and the parked truck.

The night before the accident snow had fallen. The shoulders of the highway and the ground generally were wet and muddy. There was an unimproved dirt lane into the Paasch farm a short distance north of the driveway which was surfaced with rock. The use of the dirt lane had carried wet mud onto the paved highway so that it was wet, slick, and muddy from the lane south toward the driveway. The Ricker car as it traveled south towards the location of the Paasch driveway was on a descending grade and the driver applied the brakes and decreased the speed of the car. The distance then between the Ricker car and the Scheef car is not shown. The driver of the Ricker car saw that the brakes on the Scheef car were applied and it slowed up but did not entirely stop. The Ricker car was then on the muddy and slick part of the highway. The driver of it saw two cars and a truck driving north in the west lane

of the highway towards her. The nearest was the Krav-chuk car, the second was the Marti car, and the third was a Watson Brothers truck. When she saw the vehicles proceeding north in the west lane and that the driver of the car immediately ahead of her had suddenly applied the brakes on his car she "slammed" on the brakes of the car she was driving. She testified that when she saw she was going to hit either the Scheef car ahead of her or the other vehicles she "slammed" on the brakes of the car she was driving. The Kravchuk car was in the east lane and the extreme rear portion of it was over the center line of the highway. The Ricker car skidded to the center line of the highway and the left front of it and the left rear of the Kravchuk car collided at the center line of the highway. The Marti car was immediately to the rear of the Kravchuk car, was pulling to the northeast on an angle, and the left side of it and the front of the Ricker car collided at least 1 foot east of the center line of the highway. The collisions were each a short distance north of the driveway into the Paasch farm. Appellant was injured by the collisions.

The proof produced by appellant established that no part of the Kravchuk car or the Marti car was in the west lane of the highway at the time of the contact of the Ricker car with them. The contact of the Ricker car with the Kravchuk car was at the center line of the highway. The contact of the Ricker car with the Marti car occurred east of the center line of the highway. If the Ricker car had been operated in its proper lane there would and could have been no collision of any of the cars, no accident, and no injuries. If the negligence of the driver of an automobile in which plaintiff was riding as a passenger was the sole proximate cause of the collision in which plaintiff was injured he cannot recover from a third person for such injury. Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407. The lack of control of the Ricker car necessitated the sudden and

vigorous application of its brakes to prevent it from colliding with the Scheef car. This is what caused the Ricker car to skid to the left and against the two cars in the east lane of the highway.

The interference with the continued progress of the Ricker car as it was traveling south in the west lane was the Scheef car that was preceding it and the decrease of the speed of the Scheef car. The operator of the Ricker car was obligated to anticipate any change of speed of the Scheef car and that she might have to quickly accommodate herself to the changed situation. Ziskovsky v. Miller, 120 Neb. 255, 231 N. W. 809; Haight v. Nelson, *supra*. It is, with exceptions not applicable to this case, negligence for a motorist to drive a motor vehicle on a public highway, at any time, at a speed or in such manner that it cannot be stopped, its course changed or varied in time to avoid a colliison with an obstruction discernible within the range of his view ahead. Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607.

When the driver of the Scheef car which was preceding the Ricker car was at the place in the highway where he had a view to the south where the Danner truck was parked he was then more than 400 feet north of the truck. The Kravchuk and Marti cars had then passed the truck. The former was returning to the east lane of the highway and was about 90 feet south of the Scheef car. It is a justified conclusion that when the Kravchuk car and the Marti car entered the west lane to pass the parked truck that the west lane was free of traffic to the north as far as the highway was visible and this was as much as 400 feet. Appellant was not entitled to recover against either Kravchuk or Marti until she produced evidence that they were or one of them was guilty of negligence that proximately caused or contributed to the cause of the accident. Bergerdahl v. Rabeler, *supra*.

The trial court was correct in concluding that as a

matter of law that the proximate cause of the accident was not negligence of any of the appellees. The judgment should be and it is affirmed.

AFFIRMED.