CARLETON P. BARNEY, JR., APPELLEE, V. ORIE CASH ADCOCK
ET AL., APPELLANTS.

75 N. W. 2d 683

Filed March 16, 1956. No. 33859.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellants.

*Burbridge & Burbridge* and *Herbert T. White,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee claimed damages from appellants on the ground that injuries to the person and property of appellee by the collision of an automobile operated by him and motor vehicles driven by appellants were caused by their negligence.

The circumstances and result of the collision of the vehicles as alleged by appellee are that he was operating his automobile in a westerly direction on U. S. Highway No. 6 near One Hundred Eighth and Dodge Streets in Douglas County in a careful manner at about 11:40 a. m., January 4, 1953. Appellant Adcock, hereafter referred to as Adcock, was then driving his automobile in an easterly direction near that location. He turned to the north, traveled across the highway into the north lane thereof intended and maintained for westbound traffic nearest the center line of the highway, in front of and into the automobile of appellee, and he thereby caused a head-on collision of his car with the car of appellee. Appellant Swank, herein designated Swank, was operating his automobile in a westerly direction near the location described, traveling in the south lane of the highway for westbound traffic, and it collided with the rear of the automobile of appellee at about the time the automobile of Adcock collided with the front of the car of appellee. His car was destroyed. He sustained injuries and was compelled to incur expenses for hospital and medical services. The negligence of Adcock alleged by appellee consisted of his operating his car on the wrong side of the highway, failing to keep a proper lookout, driving his car against the car of appellee, and in failing to see the car of appellee as he should have done in time to have avoided the Adcock car coming in contact with the car of appellee. Swank was charged with negligence in failing to have control of his car, in failing to have maintained a proper lookout, in operating his car too near the car of appellee so that he could not stop within the clear distance between the two cars, in failing to see the car of appellee in time to have avoided the accident, and in failing to stop his car before it collided with the car of appellee. The combined and concurrent negligence of appellants was asserted by appellee to have been the cause of the accident and the losses sustained by him.

The claims of appellee as to the manner and cause of the accident were denied by appellants. Adcock admitted he was traveling eastward on the highway at about the time and place appellee alleged and that there was an accident involving the Adcock car and the car of appellee. The version of the happening pleaded by Adcock was that the car of appellee was moving westward on the south lane of the north half of the 4-lane highway and was in the act of attempting to pass a westbound large semi-trailer truck traveling on the outside lane of the north half of the highway. A short distance ahead of appellee was an automobile operated by Chester Johnson, hereinafter spoken of as Johnson. The highway at that location was downgrade. The Johnson car encountered ice on the road and this caused it to skid, slide, and go out of control of the driver and as a result thereof it traveled from the north half of the highway to and upon the south half thereof and its left rear side and end struck the left front part of the eastbound Adcock car. The collision disabled the steering apparatus of the Adcock car, caused it to move to the left onto the north part of the highway, and collide with the westbound car of appellee. Adcock asserted that the accident was unavoidable on his part. He was traveling on the right or proper side of the highway where his car was struck by the Johnson car. Swank stated he was driving his car westward at the time and place identified by appellee on the north part of the highway a considerable distance to the rear of the car of appellee as it moved toward the west. As Swank reached the crest of a hill he encountered the automobiles of Adcock and Johnson which had been involved in an accident on the slippery portion of the highway and the semi-trailer truck had partly jack-knifed and was parked in the outside westbound lane. Swank promptly applied the brakes on his car and attempted to stop it but was unable, without negligence on his part, to fully stop it before it collided with the

rear of the car of appellee. Swank asserted the accident was unavoidable on his part.

Appellants charged that the accident was caused by the negligence of Johnson and the manner in which he operated and lost control of his car, the fact that he traveled on the wrong part of the highway, and ran into the Adcock car; and the negligence of appellee in driving his car at an unlawful speed under the circumstances while attempting to pass the semi-trailer truck, in continuing westward, and not changing his course to the right into the outside north lane when he knew or should have known that the Johnson car was out of control because of the condition of the road and the manner in which it had been operated.

The result of the trial of the case in the district court was a verdict and judgment for appellee. The separate motion of each of the appellants for a judgment without regard to the verdict or, in the alternative, for a new trial, was denied.

Appellants challenge the sufficiency of the evidence to sustain a recovery by appellee against either of them. The jury decided the issues of fact for appellee. He is entitled to have the evidence and the reasonable inferences deducible therefrom considered in this court most favorably to him. Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N. W. 2d 228.

The happenings important to the case occurred at or near the bridge or overpass at One Hundred Eighth and Dodge Streets on U. S. Highway No. 6 about 9 miles west of the city of Omaha. The highway extended east and west, was about 40 feet wide, and had four lanes. The two on the south were intended for the use of eastbound traffic and the two on the north for the use of travelers moving westward. There were at the scene of the accident yellow lines on either side of the center of the paved portion of the highway and the distance between them was about 20 inches. There was a line in the center of each half of the highway indicating the

inside boundary of the lanes. The highway was slightly downgrade from east of the bridge to it and the downward grade of the highway became more pronounced as it proceeded to the west. There was a deep cut through a hill at and extending in either direction from the location of the bridge. The maximum depth of the cut was about 50 feet. The exact distance of the cut from east to west was not shown but the record indicates that it was several hundred feet. The toe of each side of the cut commenced at the edge of the paved portion of the road and it was flush with the top of the pavement. The sides of the cut receded from the highway as they extended upward. The highway was subject to drainage from the sides of the cut. When it was thawing water would run in the cut and when it became colder it would freeze. The sun did not shine on the road where it passed through the cut. There had been no snowfall recently before the time of the accident but there was snow on the ground surrounding the traveled portion of the highway. The paved part of the highway was in good condition for travel and none of the parties involved in the accident or who appeared as witnesses had known of any ice on the highway or had experienced any difficulty in using it the day of the accident except as related herein. There was ice on the highway from about 200 feet east of the bridge through the cut and west of the bridge for a considerable distance.

The time of the events involved in this case was about noon January 4, 1953. The day was clear and cold. The westbound travelers on the highway in that vicinity immediately prior thereto were John B. Whittle, the operator of a Diesel semi-trailer truck; Chester Johnson, the operator of a 1940 Ford coach; Carleton P. Barney, Jr., the driver of a 1952 Nash Statesman; Edward W. Swank, the driver of a 1952 Oldsmobile sedan; and Don Erixon. They were traveling in the order above listed. Orie Cash Adcock was traveling from the west driving a 1950 Studebaker coach. The truck was in the extreme

north or outer lane of the highway intended for westbound traffic, traveling about 45 miles per hour. Johnson was traveling 50 miles per hour in the south lane for westbound traffic when he overtook the truck east of the bridge a sufficient distance that he was going upgrade. Johnson traveled about 300 feet in passing the truck. He cleared it and attempted to turn north into the outside lane on the highway when his car went into a skid. There was ice on the surface of the road. He was then about 250 feet ahead of the truck and he was partly in both of the north lanes. His car skidded alternately southward and northward and finally the car while on an angle to the highway of about 45 degrees, with its rear to the southeast and the front to the northwest, skidded in a southwest direction. The Adcock car was moving eastward on the highway. The left side and rear of the Johnson car and the left front of the Adcock car collided. Johnson said when his car first slid on the ice he saw the Adcock car 500 or 600 yards to the southwest, that it was traveling with its wheels on either side of the middle line between the south lanes, and that when Johnson saw the Adcock car the second time it was about 300 yards away and it was further north in the center of the eastbound lanes. Johnson did not know how far his car skidded before it struck the Adcock car. The Johnson car skidded across the entire highway toward the southwest and came to rest against a tree off the grade of the highway and to the south of it. It was a very considerable distance west of the bridge over the highway. The Johnson car and the Adcock car collided with considerable force. The rear bumper and door of the baggage compartment of the Johnson car were entirely separated from it. The Adcock car was badly damaged on its left front. The steering apparatus of it was put out of condition by the collision so that Adcock could not control it. He never recovered control of his car. It traveled to the north and east and collided head-on with the car of appellee

as it was traveling westward in the inner lane of the north half of the highway.

Swank was operating his car in the south lane of the north half of the highway moving westward at 45 to 50 miles per hour approaching the place where the bridge was over the highway. He knew there were vehicles traveling ahead of him. The first indication of trouble he observed was the Adcock car about 200 or 250 feet away coming from the left or south "* * * shooting partially across the highway" to the north. He was about 200 feet east of the truck and he saw it was starting to jackknife, with the rear end of the trailer moving south toward the center of the highway. He immediately used the brakes on his car. He "pumped" them, that is, he put them on and off because he supposed the highway was slippery in view of the movement of the truck. He was then about 100 feet behind the car of appellee and he had decreased his speed to 30 to 35 miles per hour. He was unable to stop his car and it collided with the rear of the car of appellee at about the time the Adcock car contacted it on its front end. A member of the safety patrol who investigated the accident testified that he was told by Swank while he was still at the scene of the accident that the speed of his car was 60 miles per hour immediately before he collided with the car of appellee.

The Erixon car was traveling about 100 feet behind the Swank car at a speed of 35 to 40 miles per hour at the time of the collision of the car of appellee and the Swank car. He applied the brakes of his car but they were ineffective because of the icy surface. The car of appellee and the Swank car bumped and then bounced apart and the Erixon car got between them without contact and continued across the highway and came to rest on the south shoulder of it.

Appellee produced evidence that when the Johnson car first went into a skid Adcock was on the south part of the highway 500 or 600 yards west of it. It continued

to skid and to be out of control. Johnson saw Adcock when he was about 300 yards west of the Johnson car and he was then operating his car to the north nearer the center of the highway than when he was first observed by Johnson. There was testimony received without objection substantially in the form of conclusions and, in some respects, speculation, that no part of the Johnson vehicle got south of the center of the highway until after it was struck by the Adcock car. Adcock was driving his car, that had been in use for only about 2 years, on dry pavement. It had good brakes, good tires, and was generally in satisfactory condition. His speed was 40 miles per hour. He saw the Johnson car 200 feet from him and he noticed that it was in trouble. It was then west of the bridge, it was skidding on the inner lane for westbound traffic on ice, and the grade of the highway was downward. There was nothing between Adcock and the Johnson car to obstruct vision. Adcock looked to the right to verify his position on the highway and then looked a second time at the Johnson car. It was then coming broadside across the highway toward the Adcock car. The Johnson car struck the Adcock car. Adcock did not apply the brakes on his car and did not attempt to stop it or avoid the Johnson car except he released the accelerator pedal on his car. The testimony of Adcock was that the Johnson car struck the Adcock car while it was in the outside south lane of the highway.

The driver of a vehicle on a public highway is required to operate it upon the right half of the highway unless it is impracticable to do so. § 39-746, R. R. S. 1943; Callahan v. Prewitt, 141 Neb. 243, 3 N. W. 2d 435; Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839. The violation of a statute intended to insure the safety of people using the public highways is a fact which may be considered with all the other facts and circumstances shown in evidence in determining whether negligence has been established. Sege-

bart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678; Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612. Negligence, to justify a recovery of damages, must have proximately caused or contributed to the injury for which compensation is sought. Ricker v. Danner, 159 Neb. 675, 68 N. W. 2d 338. A user of a highway is required to exercise reasonable care for the safety of others. What is reasonable care does not lend itself to definitive statement which automatically resolves all cases. The presence or absence of reasonable care must be determined by the facts and circumstances of each case. Haight v. Nelson, 157 Neb. 341, 59 N. W. 2d 576; Fick v. Herman, 159 Neb. 758, 68 N. W. 2d 622. If there is evidence sufficient to sustain a finding for the party who has the burden of proof in an action triable to a jury the trial court may not disregard the proof and decide the case as a matter of law. Haight v. Nelson, supra; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701. The proof in this case presented an issue of fact as to whether or not Adcock was guilty of negligence that was the proximate cause or contributed to the injuries for which compensation was sought by appellee.

Swank knew there were vehicles on the highway ahead of him traveling toward the west. The day was clear. The sun was shining. Vision was unobstructed. He was alerted to the fact that there was unusual hazard on the highway 200 or 250 feet in front of him consisting of, as he expressed it, the Adcock car shooting partially across the highway from the south to the north. Swank saw the truck that was ahead of him about 200 feet start to jackknife and the rear end of the trailer moved south toward the center of the highway. The speed of the Swank car was then admittedly 40 to 50 miles per hour. The speed was decreased some but he testified that he was traveling 30 to 35 miles per hour when he was about 100 feet east of the rear end of the car of appellee with which the Swank car collided. The testimony of the safety patrolman was that Swank

told him at the place of the accident that the speed of the Swank car immediately before the collision was 60 miles per hour.

Section 39-749, R. R. S. 1943, provides in part: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and condition of the highway." It is firmly established in this jurisdiction, with exceptions not applicable to this case, that it is negligence for a driver to drive an automobile on a highway in such a manner that he cannot stop it and avoid collision with an object within the range of his vision ahead. Nothing will excuse his failure to see what is plainly in sight. If he did not see he was not alert to the situation and if he saw and did not avoid a collision he did not have the required control. Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607.

In Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250, the court said: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision." See, also, Doleman v. Burandt, 160 Neb. 745, 71 N. W. 2d 521.

In Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106, the reason of this rule is stated: "The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it. * * * There is nothing that will excuse his failure to see what was plainly in sight if he had maintained a proper lookout."

There are exceptions to the general rule stated above. Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422. The general rule has no application in any case when reason-

able minds might differ on whether or not the operator of a motor vehicle exercised the care and caution required of a reasonably careful and cautious person under the circumstances of the particular situation. Miers v. McMaken, *supra;* Haight v. Nelson, *supra;* Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Fick v. Herman, *supra.*

Appellants argue that a slippery condition of a highway caused by ice thereon may be considered the proximate cause of a motor vehicle becoming unmanageable and colliding with another vehicle. Adcock says that he may not be reasonably charged with the duty of anticipating that Johnson would encounter an icy area of the highway, lose control of his car, and that it would skid into and disable the Adcock car. He thinks that such intervening circumstances were the proximate cause of the resulting damages sought to be recovered in this case.

Swank contends that ice upon a highway may be considered the proximate cause of a vehicle becoming unmanageable and colliding with another vehicle. He says that he may not be reasonably charged with the duty of anticipating that the Adcock car would collide with the Barney car and substantially stop its progress as it was traveling west and that the condition of the road would prevent Swank from stopping his car before it collided with the Barney car. He thinks that such intervening circumstances were the proximate cause of the resulting damages sought to be recovered in this case.

Actionable negligence exists when the injury or the loss is the proximate result thereof. The proximate result must be the natural and probable consequence which ought to have been foreseen or reasonably anticipated in the light of the attendant circumstances. An injury is not actionable if it would not have resulted from the alleged negligence but for the interposition of a new and independent cause. Proximate cause, as used in the law of negligence, is that cause which in the natural and continuous sequence, un-

broken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. An efficient, intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. The cause of an injury is that which actually produces it while the occasion is that which provides an opportunity for the causal agency to act. An alleged cause of an accident may sometimes be merely a condition and not the real cause. The existence or activities of inanimate things are usually mere conditions and not causes. Ricker v. Danner, *supra*.

In Murray v. Pearson Appliance Store, *supra,* this court said: "The existence or presence of smoke, snow, fog, mist, blinding headlights, or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances."

Ice upon a highway is not generally considered an independent, intervening causal factor that relieves a motor vehicle operator from responsibility for the result of his negligence. In Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439, the court observed: "Now, in the case at bar, there was ice in the highway, where defendant was driving too fast to avoid the collision, but the existence of this ice might well have been anticipated by an ordinarily careful driver, for in a case in which smoke made it impossible to see another car, this court said: 'In such case, the smoke is a condition which the jury should consider in connection with the other evidence in determining the question of negligence.' Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825.''

In King v. Carnahan, 61 Ohio App. 84, 22 N. E. 2d 436, the defendant sought to excuse his liability for the collision of his truck operated by his employee with

an automobile because an area of the highway coated with ice was obscured by a curve in the road until the truck was within about 200 feet of the iced area of the road. Defendant argued that these facts constituted a legal excuse for violation of the provision of the statute which prohibited any person from driving a motor vehicle upon a public highway at a greater speed than would permit him to bring it to a stop within the assured clear distance ahead. The court rejected the argument of defendant by this language: "A consideration of these facts discloses that they all relate to the condition of the surface and other conditions of the highway and are such facts as it is the duty of the driver of a motor vehicle under the statute to take into consideration in operating his motor vehicle, and none of them relates to an independent, intervening causal factor; and such facts, therefore, do not constitute a legal excuse for the violation of the provisions of said section by the operator of defendant's truck."

A condition of ice on a highway being accepted as the proximate cause of an accident thereon is that the proof must be that the accident would in some way have occurred by virtue of the existence of the ice even if the motorist had not been negligent. In Colas v. Grzegorek, 207 F. 2d 705, the United States Court of Appeals said: "In order for accident to be solely attributable to icy condition of highway, it must be evident that accident would in some manner have happened because of ice even if motorist had not been negligent." See, also, Hickey v. Missouri Pacific R. R. Corp., 8 F. 2d 128; McDowell v. Interstate Oil Co., 208 Iowa 641, 224 N. W. 58, corrected on rehearing 225 N. W. 855; Hart v. Wabash R. R. Co., 177 F. 2d 492; Restatement, Torts, § 432, p. 1161.

It was the duty of the state safety patrol to travel the road frequently, watch for any unusual condition of it, and report to the proper official if anything was needed. A member of the patrol had been over the

highway where the accident occurred earlier that day. He did not find it in unsatisfactory condition. There were sand boxes along the highway in the cut but it was not thought necessary to sand the highway at that location and no sand was applied to it. Appellee started to pass the truck but he saw the rear of the trailer moving towards the lane he was in and he decreased the speed of his car and did not pass the truck. He had no difficulty in controlling his car. Motorists who arrived at the scene of the accident by use of the highway experienced no difficulty in traveling on it, stopping their cars at or near the place of the accident, and afterwards proceeding on their respective ways. It was not made evident that the ice on the highway would in some manner have caused the accident if there had been an absence of negligence. Adcock in his argument assumes that he was not in any way negligent; that the Johnson car went out of control of its driver and skidded across the highway to the south; that it collided with the Adcock car while it was prudently being operated in the outside south lane of the highway; and that it was thereby damaged and made unmanageable. If all these things were established the situation and result would be different. The obstacle is that the jury on conflicting evidence as to these things found against Adcock. The slippery condition of the highway may not be considered under the circumstances of this case the proximate cause of the accident and injuries of which appellee complains.

The trial court instructed the jury as to the doctrine of concurrent negligence and upon what findings by the jury it should or should not be applied to the case. The correctness of the substance of the charge in this respect is not challenged. Appellants argue that the claim of appellee against Adcock was based on the contention that he negligently operated his car on the wrong side of the highway and drove it against the front part of the car of appellee when he was properly pro-

ceeding toward the west on his proper side of the road and that the wrong charged by appellee against Swank was that he negligently permitted the car he was driving toward the west to travel into and against the rear of the car of appellee about the same time that the Adcock car collided with the front of his car. Appellants conclude that these acts if conceded and negligently done did not constitute concurrent negligence. There is an absence of any authority cited to support their contentions in this regard. The definition of concurrent negligence formulated many years ago in this jurisdiction and since consistently approved and applied condemns the contentions of appellants. If separate, independent acts of negligence by different persons combine to produce a single injury, each participant is liable for resulting damage, though one of them alone might not have caused injury. Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569; Wright v. Lincoln City Lines, Inc., 160 Neb. 714, 71 N. W. 2d 182.

The district court advised the jury by instruction No. 1 that the charges made by appellee against Adcock were that he was operating his car towards the east and suddenly turned it to the north across the center of the highway into the south lane intended for westbound traffic directly in front of and into the automobile which appellee was operating towards the west and that the negligence alleged by appellee against Adcock was (a) in operating his automobile to the left of the center of the highway into the lane for westbound traffic; and (b) in driving his automobile into and against the automobile of appellee. The right of the jury to render a verdict against Adcock was conditioned, by the charge of the trial court, upon appellee's establishing by the greater weight of the evidence that Adcock was negligent in one or both of the respects stated above; that his negligence was the proximate cause or was proximately a contributing cause of the accident

involved in the case; and that appellee suffered injury and damages because of it.

Instruction No. 16 given by the court contains the following: "If a preponderance of the evidence fails to establish that defendant Adcock did not use ordinary care in his driving when he saw the Johnson car skidding and fails to establish that immediately before and at the time of the collision with the Johnson car Adcock was north of the yellow line separating the east and west highway lanes, and if you find from the evidence that the left rear of the Johnson car collided with the Adcock car while the latter was in the eastbound highway lanes, and you further find that the control of the Adcock car was lost by this defendant due solely to such collision, and that the defendant Adcock was not negligent in his driving after such collision, then you are warranted in returning a verdict for defendant Adcock." Adcock contends that the instruction was prejudicial. It required the jury to find that "Adcock was not negligent in his driving after such collision" of the Johnson car with the Adcock car before the jury could return a verdict for Adcock. Appellee did not charge by pleading and he did not produce evidence that Adcock was negligent in the operation of his car after it was in collision with the Johnson car. The evidence is that the Adcock car was injured when contact with it was made by the Johnson car so that it was not thereafter manageable; that Adcock attempted unsuccessfully by all means available to him to control it; that he was unable to do so; and that he never had control of the car after its collision with the Johnson car. The court had limited the charges of negligence against Adcock to the two above stated but by instruction No. 16 it introduced a new and additional item of negligence which was unsupported by either pleading or evidence. The trial court made a finding by the jury that Adcock was not negligent in the operation of his car after the collision an indispensable necessity to the exoneration of Adcock

from damages to appellee. The conjunction "and" joined the parts of instruction No. 16. A trial court may not make the success of a party to the case dependent upon a hypothesis foreign to the litigation. Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677; Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500; Gain v. Drennen, 160 Neb. 263, 69 N. W. 2d 916.

The charge had in preceding part of it advised the jury substantially that if the appellee had failed to prove by a preponderance of the evidence that Adcock did not operate his automobile to the left of the center of the highway into the lane for westbound travel or did not drive it into or against the car of appellee the verdict should be for Adcock. This part of the charge said nothing about Adcock negligently driving his car after the contact of it and the Johnson car. There is a direct conflict in the part of the charge just referred to and instruction No. 16. Conflicting instructions are erroneous and they are prejudicial unless it is apparent from the record that the jury was not misled thereby because it is impossible to know which of the directions the jury followed. Peterson v. Chicago, M. & St. P. Ry. Co., 101 Neb. 3, 161 N. W. 1043; Bryant v. Modern Woodmen of America, 86 Neb. 372, 125 N. W. 621, 27 L. R. A. N. S. 326, 21 Ann. Cas. 365; Sanderson v. Huffman, 132 Neb. 321, 271 N. W. 870; Hief v. Roberts Dairy Co., 138 Neb. 885, 296 N. W. 331; Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265.

The quoted part of instruction No. 16 requires the jury to find a double negative, a single negative, and three affirmatives before it could properly exonerate Adcock from liability for negligence. The instruction is involved and confusing and is incorrect in the respect above discussed. The inquiry in this regard as shown by the record was properly: Did the evidence fail to show that Adcock operated his car left of the center of the highway in the lane for westbound traffic or did the evidence fail to show that he drove his car into and

against the automobile of appellee? If the finding as to both was in the affirmative Adcock was entitled to a favorable verdict. The purpose of an instruction is to guide the jury in its deliberations and to aid it in rendering a correct verdict. Hence an instruction should be clear and concise and should not go beyond any issue or issues of fact in the case as made by the pleadings of the parties. Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200. The proof intended to show that Adcock operated his car north of the center of the highway and that the collision between it and the Johnson car took place on the north half of the highway is slight and unsatisfactory. It may not be said, under the circumstances of this case, that instruction No. 16 was error without prejudice to Adcock.

The amount of the verdict and judgment is not claimed to be excessive except the jury found the damage to the automobile of appellee was $1,950 and appellants claim that the proof shows that it was only $1,590 or $360 less than the jury allowed. There was some evidence that an appraisal or estimate of the value of the car of appellee before the accident was $2,150 and that the salvage value of it after the accident was $510, the amount for which it sold. There was proof produced by appellee that the value of his car before the accident was $2,455 and that the value of it after the accident was $500. There was evidence to sustain the verdict. Appellee is entitled to the most favorable view of the evidence and it may not therefore be said to be excessive.

The judgment as to Edward D. Swank should be and it is affirmed.

The judgment as to Orie Cash Adcock should be and it is reversed and the cause is remanded for further proceedings as to him.

AFFIRMED AS TO EDWARD D. SWANK, AND REVERSED AND REMANDED AS TO ORIE CASH ADCOCK.