GERALDINE M. BENEDICT, APPELLEE, v. EPPLEY HOTEL COMPANY, A CORPORATION, DOING BUSINESS UNDER THE NAME AND STYLE OF ROME HOTEL, APPELLANT.

73 N. W. 2d 228

Filed November 25, 1955. No. 33784.

*Mecham, Stoehr, Moore, Mecham & Hills,* for appellant.

*Matthews, Kelley, Fitzgerald & Delehant,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This action is for damages claimed to have been sus-

tained by appellee because of injuries inflicted upon her as a result of negligence of appellant. Appellee had a verdict and judgment. A motion of appellant for a directed verdict at the close of all the evidence was denied. Motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were overruled.

The cause of action pleaded by appellee is as follows: Appellant, a corporation, maintains and operates hotels in Omaha. One of them is the Rome Hotel. Appellant on or about March 5, 1949, operated a bingo game as a part of its activities and as an attraction to induce persons of the city and surrounding territory to the Rome Hotel. The facilities for the game, including the place where it was conducted, the tables, and the chairs were provided by appellant. The appellee at the invitation of appellant attended the game, procured from an attendant in charge a chair, and occupied it at one of the bingo tables. She sat on the chair for a short time when it collapsed and hurled her to the floor with force and violence causing her numerous and severe permanent injuries. The chair was defective in a respect unknown to appellee. The defect therein caused it to collapse and injure her. It was a folding chair constructed so that when it was not in use the seat could be folded up against the front of the back of the chair. If it was not defective or out of repair it could not and would not collapse or cause injury to a person sitting on it. The appellee invoked the doctrine of res ipsa loquitur. The defenses interposed by appellant were a denial of the claims of appellee and a plea of her contributory negligence.

The jury decided the issues of fact for appellee. She is entitled to have the evidence viewed and considered in this court most favorably to her and she must be accorded the benefit of reasonable inferences therefrom. Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913; Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603.

Appellee did not allege specific negligence. She re-

lied upon general negligence and the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur means that the facts of the occurrence permit, but do not compel, an inference of negligence. It is a rule of evidence and not of substantive law. It is a qualification of the general rule that negligence will not be presumed but must be proved. The doctrine takes the place of evidence as affecting the burden of proceeding with the case. If the facts are shown to which the doctrine of res ipsa loquitur has application an inference of negligence arises, that is, the thing speaks for itself and a question is presented for the jury as to liability. Benedict v. Eppley Hotel Co., 159 Neb. 23, 65 N. W. 2d 224.

The validity of the judgment is attacked on the hypothesis that the doctrine of res ipsa loquitur is not applicable to this cause because appellant says that the instrumentality, that is the chair which produced the injury complained of, was not at the time of the accident in the exclusive control and management of appellant; that the defect in the chair concerned in the accident was latent and could not have been discovered with reasonable care; and that the evidence at the second trial of the cause was materially and substantially different from what it was at the first trial of the case. These contentions make it appropriate to consider and determine if the findings and matters decided on the first appeal in the cause are the law of the case. It is said in Master Laboratories, Inc. v. Chestnut, 157 Neb. 317, 59 N. W. 2d 571: "Where on the retrial the facts relating to the issues upon which the findings were made are the same as those adduced at the former trial, such findings are binding on the parties, the trial court, and this court as the law of the case. It is only where the findings on a retrial are made on facts relating to the issues which are materially and substantially different that the law of the case does not apply." This court also said in Noble v. City of Lincoln, 158 Neb. 457, 63 N. W. 2d 475, that: "The decision of questions presented to this court

in reviewing the proceedings of the district court becomes the law of the case, and for purposes of the litigation, settles conclusively the matters adjudicated expressly or by necessary implication."

Appellant did not at the second trial of this case, after it had been on the first appeal considered, determined, and remanded by this court to the district court, attempt by any method to satisfy the burden on it of showing that at the second trial the facts relating to the issues upon which the findings and decisions were made on the first appeal of the cause were materially and substantially different from those adduced at the first trial of the case in the district court. The result is that this omission prevents this court from considering or determining the contention of appellant that the evidence produced at the second trial was materially and substantially different from the evidence produced at the first trial of the cause. The law applicable is stated in Callahan v. Prewitt, on rehearing, 143 Neb. 793, 13 N. W. 2d 660, as follows: "It is therefore the holding of this court that where on appeal findings of fact are made which become the law of the case and there is a remand for a new trial, on such retrial, such findings are binding on the parties, the trial court and this court, unless on the retrial the facts relating to the issues upon which the findings were made are materially and substantially different from those adduced on the former trial, and that the burden of showing a difference shall rest upon the party making the claim.

"In order to avoid confusion in the future we deem it advisable to say here that the burden is evidentiary and is for determination by the court and not the jury. As to methods, of course, the introduction of the bill of exceptions of the first trial or pertinent parts thereof would be most satisfactory but there should be no such limit on method. The right to present this question should not be denied if for some reason the bill of exceptions is not available."

The findings and decision on the first appeal are the law of the case and are binding on the parties and this court. It was found and determined on the first appeal that appellant had the control and management of the chair occupied by appellee at the time it collapsed; that the defect in the chair which caused the accident was not latent; that appellee was an invitee of appellant at that time; and that she was in this cause entitled to the benefit of the doctrine of res ipsa loquitur. Benedict v. Eppley Hotel Co., *supra.*

Tyler v. McDougal, 130 Neb. 633, 265 N. W. 887, in the respect hereafter indicated, is not in harmony with the doctrine quoted above from Callahan v. Prewitt, *supra,* and the language therein: "While the record in the former trial is not before us for the purpose of comparison, a reference to the two former opinions in this case indicates that the evidence is not substantially the same * * *" is disapproved and to that extent that case is overruled.

The object of the Military Order of the Cooties, an auxiliary of the Veterans of Foreign Wars, was to provide charity for needy and unfortunate veterans, their families, and widows. One of its activities at the time important to this litigation was the conducting of bingo games to provide funds to realize the purpose to which it was devoted. There was conducted a bingo game on the premises of the Rome Hotel in Omaha, owned and operated by appellant at the time appellee was injured. When a bingo game was to be played there the hotel selected and furnished the place for it, erected the tables, placed the chairs, and furnished all other facilities but the supplies required in the conduct of the game consisting substantially of tickets, cards, and corn. The hotel set up the tables and arranged the chairs for the participants and all who came to attend the game, and at the conclusion the hotel dismantled the tables, removed the chairs, and placed them in storage.

The bingo game on the evening of March 5, 1949, was

scheduled to start at .8 p. m. The mother of appellee and a friend of hers were present when the game was commenced. Appellee knew that they were to be there and it was because of this that she attended. She arrived at about 9:30 p. m., paid the charge required to become a player, and went into the ballroom where her mother and her friend were seated at a table and were participating in the game. There was a very large attendance at the game that night and it was conducted in three adjoining and connected rooms. One was the ballroom and another was the room in which a bar was located and operated. Appellee found a vacant place at the table across from where her mother was seated. Appellee looked for an unoccupied chair but did not find one in that room. She looked for and found one in the connecting hallway between the rooms where the game was in progress. She asked one of the attendants, a Cootie who was assisting in the conduct of the game, if she could use the chair. He said he had been using it but she could have it. She also saw Mr. Pennington and inquired of him if she could have the use of the chair and he advised her to take it and use it. She took it to the table where her mother was, occupied it, and entered the game. She did not then know that it was a folding chair. She was seated on the chair for 20 or 30 minutes when it suddenly gave way backwards and somewhat to one side and caused appellee to nearly turn a backwards somersault. Her head was severely jerked, she was thrown to the floor, was knocked breathless, and was injured. The game was stopped. Mrs. Pennington, the wife of the man directing the game, came to her, helped her up, and she was given a different chair. She did not realize that she was injured much. She sat at the table and continued in the game for some time. She noticed the chair after it failed and saw it was a folding chair and that it was out of order. About a half hour later she began to suffer discomfort as a result of the fall, left the game, reported the accident

and her condition to Mr. Pennington, and he sent her to the manager of the hotel. She went to the office of the manager and reported what had happened and then went to her home. The chair involved in the accident was delivered to and was taken charge of by Mr. Pennington. He described it as a folding chair with braces on its sides fastened with bolts. The braces on one side had become loose at the back of the chair and it collapsed sideways. He took it that night in the condition it was after the accident to the office of the hotel manager and reported to him what had happened. He left the chair with the manager who accepted and retained it. Mr. Pennington testified that appellee was turned over to the hotel authorities for care.

It was the condition of the chair furnished by appellant and not the use made of it that was responsible for the fall and injury of appellee. She had done no more than sit upon it as was intended by appellant that someone should when it collapsed and there is no suggestion that her conduct or that of anyone except appellant in reference to the chair was in any manner improper.

Instruction No. 2 was a correct summary of the pleadings in the case and it properly advised the jury that it was merely a statement of the contentions made by the parties to the case and was not to be considered as evidence. Appellant complains of two statements therein. The first is that the general public, including the plaintiff (appellee), was invited to attend the bingo game and the other is that plaintiff procured a chair from an attendant. The petition contained these allegations. They were not only each supported by evidence but there is no dispute in the proof as to them. It was found on the first appeal of this cause that appellee was on the premises of appellant as its invitee. That finding is the law of the case and may not be disputed. Appellant made no effort at any time during the course of the litigation to have the person referred to in the petition and

in the instruction as "an attendant" identified or his status defined. It is too late for it to object after the case has been tried twice.

Appellant assails the language in instruction No. 3 to the effect "That at the time and under the circumstances set forth in plaintiff's petition the defendant (appellant) was negligent." This was part of the charge as to what appellee was required to prove to entitle her to a recovery in the case. The essence of the objection of appellant is that the jury had no way of knowing the contents of the petition. This has no validity. The court had told the jury what the petition contained by an instruction immediately preceding instruction No. 3. A second objection to instruction No. 3 is that the court did not include therein that appellee was required to establish by the weight of the evidence that the chair was at the time of the accident in the exclusive control and management of appellant. This was specifically and clearly stated in instruction No. 5 which charged the jury as to the doctrine of res ipsa locquitur and it was the subject of a finding favorable to appellee on the first appeal of this case. Neither of the objections to instruction No. 3 can be sustained.

Error is claimed because of the part of instruction No. 5 which advised the jury that if it found, from a preponderance of the evidence, that the chair was under the management and control of the defendant at the time of its collapse the jury was permitted to infer that the defendant was negligent without proof of specific acts of negligence. The alleged error is based upon the view of appellant that the proof established that the chair had been in the control and management of the Military Order of the Cooties for as much as 2 hours before the accident. What has been said herein disposes of this contention adverse to appellant. The trial court could, on the basis of the present record, have instructed the jury that the hotel had the control and management of the chair. In determining whether or not there is

error in a sentence or clause of an instruction it will be considered with the instruction of which it is a part and the other parts of the charge to the jury and the true meaning thereof will be deduced not from the sentence or phrase alone but by a consideration of all that it said on the subject. Instructions should be considered as a whole and if they fairly submit the case the instructions will be approved. Myers v. Willmeroth, 151 Neb. 712, 39 N. W. 2d 423; Bolio v. Scholting, *supra.*

Appellee prior to the accident enjoyed good health and was free from bodily defects or disability. She was a strong, active woman and performed the work required in the home maintained by her and her husband. She was 43 years of age and had an expectancy of about 26 years. The accident in which she was injured caused her to suddenly and violently fall to the floor. She soon thereafter had symptoms of injury. The accident occurred on a Saturday evening. Sunday she suffered from headache and back pains. She was confined to her bed substantially all that day. Monday she consulted her physician, a general practitioner. He examined her and taped her lower lumbar section. The tape was left on for about 10 days. The pain in her back increased and heat treatments were prescribed and applied. The doctor saw and treated her 8 or 10 times during a period of 2 or 3 weeks. The result was not satisfactory and he referred her to another doctor for a diagnosis. This doctor advised her to continue the services of her physician. She did but her condition was not improved and on March 30, 1949, she consulted Dr. Iwersen, an orthorpedic specialist. Appellee gave him a history of a fall from a chair on March 5, 1949. He found she had a tenderness over the lumbosacral area and limitation of motion. His treatment of her did not produce any substantial improvement in her condition. He had prescribed therapy, rest, and support in bed consisting of placing boards under the mattress she used. This continued until January 27, 1950, when he had her taken to a hos-

pital. He did a spinogram or a myelogram and found that she had a herniated disc between the 4th and 5th lumbar vertebrae. His opinion was that her condition as he found it was the result of the trauma she sustained on March 5, 1949. He had her thereafter wear a specially constructed and reinforced corset which supported her body and limited the movements thereof. He continued as her medical adviser until he left Omaha in January of 1953.

Appellee afterwards, on the advice of another doctor who made arrangements for her, went to the Mayo Clinic at Rochester, Minnesota, and stayed there 3 weeks. She later consulted Dr. Gross, an orthopedic surgeon, on February 10, 1953. He found limitation of motion and tenderness of the back of appellee, some sensory change in the left leg, and some difference of knee jerk on the left side as compared to the right. The sensory change corresponded to the 5th lumbar nerve root or nerve between the 4th and 5th lumbar vertebrae on the left side. He diagnosed the condition of appellee as a herniated disc between the vertebrae above mentioned on the left side. Dr. Gross operated upon appellee at St. Joseph's Hospital in Omaha March 10, 1953. He explored the interspaces in her back on three different levels for discs that might be pathological. The bone was removed between the 3rd and 4th lumbar vertebrae, the 4th and 5th, and between the 5th and the sacrum. The nerve roots were pulled toward the middle. He found she had a degeneration of the disc between the 4th and 5th lumbar vertebrae and the one between the 5th lumbar vertebrae and the sacrum. He removed these. The duration of this operation was 2 hours and 15 minutes. The opinion of the doctor was that the condition of the appellee was caused by the accident she was the victim of on March 5, 1949. He estimated her permanent disability at 15 per cent of the body as a whole. He said her leg pain had much improved when he last saw her in July 1953, but she could

not do heavy work and her back would bother her if she overexerted herself. Appellee to the time of the trial had not been able to do any lifting or heavy work in her home.

The record contains no indication that the jury was actuated during its deliberations or in arriving at a verdict by passion, prejudice, bias, or any other improper matter or conduct. The fact that the second trial resulted in a larger verdict than the first trial is not indicative of passion, prejudice, mistake, or disregard by the jury of the evidence or the charge of the court. The determination of the amount that would compensate appellee was the duty of the jury and its action in this respect may not be disturbed. The verdict has a reasonable relationship to the injuries and damage proved. In Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186, this court said: "In an action for damages, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the sound discretion of the jury and courts are reluctant to interfere with a verdict so rendered. * * * A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." See, also, Dunn v. Safeway Cabs, Inc., 156 Neb. 554, 57 N. W. 2d 75; Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643.

The judgment should be and it is affirmed.

AFFIRMED.