CLIFTON BRYANT, APPELLEE, v. EDMOND E. GREENE,
APPELLANT.

89 N. W. 2d 579

Filed April 25, 1958.   No. 34318.

*Crawford, Garvey, Comstock & Nye,* for appellant.

*Alfred A. Fiedler,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Clifton Bryant as plaintiff in the district court for Douglas County, against Edmond E. Greene, defendant, to recover damages caused by the negligence of the defendant in the operation of his automobile. The case was tried to a jury resulting in a verdict in favor of the defendant. The plaintiff filed a motion for a new trial which was sustained. From the order sustaining the plaintiff's motion for new trial, the defendant appeals.

The plaintiff's petition alleged in substance that about 4:29 p.m., on May 27, 1954, the plaintiff was crossing Q Street at Twenty-eighth Street, the same being a thoroughfare in the city of Omaha, from the north to the south curb in the legal pedestrian walk; that at about the same time the defendant was operating his 1951 Plymouth coupé north on Twenty-eighth Street and made a right turn, turning east on Q Street, and negligently drove into and against the plaintiff's person knocking him to the pavement and causing injuries to him; and that the defendant was negligent in that he failed to yield the right-of-way to the plaintiff as provided in the ordinances of the city of Omaha and the statutes of Nebraska, and failed to keep a proper lookout. The petition then alleged the injuries sustained by the plaintiff and the expenses incident thereto, such as

hospital and medical expenses and loss of time from work, and prayed judgment against the defendant in the amount of $5,158.15 and costs of the action.

The defendant, for answer to the plaintiff's claim, alleged that a payment was made to the plaintiff and a release obtained from plaintiff in full and complete settlement of the said accident. In addition the defendant's answer denied any negligence on his part but alleged the proximate cause of the accident was the contributory negligence of the plaintiff, and prayed that the plaintiff's petition be dismissed.

For his reply to the answer of the defendant, the plaintiff alleged that any payment made to the plaintiff or release obtained from him was based on fraud and misrepresentation on which the plaintiff relied to his damage; and that said payment made was inadequate in that the sum of $34 was paid plaintiff for said release, together with a promise to pay doctor and hospital bills. The plaintiff renewed the prayer of his petition asking judgment against the defendant.

The defendant contends that the trial court erred in sustaining the plaintiff's motion for a new trial.

While this is the third opinion in this case in this court, we make reference only to its second opinion found in 164 Neb. 15, 81 N. W. 2d 580, wherein this court reversed the judgment and remanded the cause, holding that the trial court was in error in directing a verdict for the defendant at the close of the plaintiff's case on the issue of whether or not the settlement and release were obtained by misrepresentation and fraud.

The following authorities are applicable to a determination of this appeal.

In Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, it was said: "A new trial is to be granted for a legal cause and where it appears that a legal right has been invaded or denied. A new trial is not to be granted for arbitrary, vague, or fanciful reasons. * * * Where a party has sustained the burden

and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured." See, also, Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578.

In the instant case the trial court gave no reasons for its decision. In this connection, it is said in Greenberg v. Fireman's Fund Ins. Co., *supra:* "If, as in the instant case, the trial court gave no reasons for its decision, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. Under these circumstances the appellant is not required to establish a negative. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions.

"By that process the questions to be determined here are presented in a practical manner. Those errors will then be considered and determined here so far as necessary to the appeal, subject, of course, to our right to notice and consider plain errors not assigned. Such a procedure fully protects the rights of the parties." See, also, Pongruber v. Patrick, *supra,* and cases cited therein.

"The district court has the power and is required to consider and determine motions for a new trial by the exercise of its judicial discretion." Olson v. Shellington, 162 Neb. 325, 75 N. W. 2d 709.

The record discloses that at the time of the accident the plaintiff was 26 years of age. He had an eighth-grade education, and at the age of 13 years started to work. On the day of the accident he was employed in a packing plant. He left the packing plant

about 4:30 p.m. He stopped at the northeast corner of the intersection of Twenty-eighth and Q Streets and when the traffic light turned green, he started south across Q Street at the cross walk on the east side of the intersection. When he was within approximately 6 or 8 feet of the south curb of Q Street he was struck by the defendant's automobile as it was making a right turn from Twenty-eighth Street onto Q Street. Defendant did not stop but reported to a police officer nearby that he thought he had hit a pedestrian at Twenty-eighth Street. The defendant was later arrested on the charge of reckless driving. After the accident the plaintiff was taken to the County Hospital where he remained a short period of time. After that he was in the Methodist Hospital where he remained from Thursday, the day he was injured, until the following Sunday. He was taken to the police station and booked as a complaining witness. He returned to work the following Wednesday.

The defendant was found guilty of reckless driving and paid a fine of $35 and costs.

The defendant testified that he stopped for a red light, and at the time of the accident was traveling approximately 5 or 6 miles an hour; that he made a right turn, not knowing that he struck anyone; that a person in his car told him to stop as he thought he had hit someone; and that the plaintiff got in touch with him by telephone and he told the plaintiff to see Mr. DeFrance, the agent for the company that was the insurance carrier on the defendant's automobile.

The plaintiff testified that on June 12, 1954, he went to the office of Mr. DeFrance to discuss a settlement; that Mr. DeFrance told him he was in trouble with "a bunch of cops" and if he made the settlement he would not have to worry about going to jail or getting into any more trouble with the police; and that he would not be in any trouble if he agreed to a settlement of the hospital bills and $34 for the loss of 2 days' work.

He asked Mr. DeFrance what about his injuries and was told that the hospital bill and the 2 days' work in the amount of $34 would be taken care of. He further testified that he was paid $17 a day for 2 days, and received nothing for his injuries.

Mr. DeFrance testified that he was in the general insurance business, representing a number of companies including the Fireman's Fund Indemnity Company, and had been in the insurance business since 1919; that he had the liability and property damage insurance on the defendant's car; that he called the plaintiff on the telephone and told him when he was ready to settle, to come to his office; that the plaintiff called and said that he would come to the office; that the plaintiff came to the office; that DeFrance asked the plaintiff if he had his bills and how much time he had lost from work, and also if he would be satisfied if he was paid for 2 full days' time; and that the plaintiff said he would. DeFrance asked the plaintiff about the hospital bill and made a check out to the plaintiff who endorsed it to the hospital. The plaintiff then signed the release. There was no conversation whatever with regard to the release. DeFrance denied any statement to the effect that if the plaintiff would sign the release he need not be afraid of the police. He further testified that he had nothing to do with the police court hearing, as the defendant had his own attorney; and that the plaintiff made no request to this witness other than that his wages, and doctor and hospital bills be paid. He further testified that he felt the settlement was fair.

The plaintiff testified with reference to his injuries, that his right hand was bleeding, and he suffered pain in his lower back; that he went back to work on Wednesday; that he stopped working on Friday a week after the accident because he was unable to perform his duties due to the injuries to his back and hand; and that he tried to work on construction but was unable to do so because it was too heavy work. He further

testified that he saw Dr. Richard Smith in June, and other doctors because of the injuries to his back and fingers. At the time of the trial his back was still stiff most of the time and he suffered pain. Due to his injuries he had not been able to work steadily since the accident.

Dr. Richard Smith testified that on June 26, 1954, the plaintiff complained of a stiff and painful back, that he was unable to grip with his right hand, and that he had soreness in the middle finger of his right hand. As a result of his examination, the doctor felt that the plaintiff had a contusion of the lumbar region of his low back and right hand at the time of the injury. He found tenderness at the third lumbar level in his low back, and also found guarded lumbar motion at that time, and muscle guarding. The plaintiff had a list to the right in his low back due to pain, and was unable to lift heavy objects at that time. The doctor again examined the plaintiff on May 7, 1957, and stated that the plaintiff had pain in his back which could have resulted from the accident and could possibly have lasted from the date of the accident. He further testified that he had X-ray pictures of the plaintiff made by Drs. Simonds, Hardy, and McArdle. On cross-examination he testified that he found no bruises on the plaintiff's back or hand on the occasions of his examinations on June 26, 1954, and May 7, 1957.

Dr. William T. Rance testified in behalf of the defendant. He had examined the plaintiff in January 1956, and at that time the examination disclosed nothing abnormal about the plaintiff's hand, arm, or back. He did not take X-ray pictures as he understood that previous X-rays had proved negative.

The plaintiff was first seen by Dr. Bach who gave first aid to the plaintiff at the hospital. Dr. Bach was paid the sum of $10 by the defendant's insurance company.

In the case of Bryant v. Greene, *supra,* heretofore referred to, this court said: "Upon a consideration of the evidence and the surrounding circumstances, together

with the reasonable inferences to be drawn therefrom, we conclude that the evidence was sufficient for consideration by a jury to determine if the settlement and release were obtained by misrepresentation and fraud." Therefore, the principal issue in this case that was submitted to the jury was whether or not the settlement and release were obtained by misrepresentation and fraud. There is apparently no question of the liability of the defendant as to the accident or that personal injuries were received by the plaintiff.

In Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N. W. 2d 228, this court held: "If on the retrial the facts relating to the issues upon which the findings were made are substantially the same as those adduced at the former trial of the cause, such findings are binding on the parties, the trial court, and this court as the law of the case. It is when the findings on a retrial are made on facts relating to the issues which are materially and substantially different that the law of the case does not apply."

The plaintiff contends that the trial court failed to instruct the jury as to the law applicable to the material issues raised by the pleadings and supported by the evidence; and that the trial court gave instructions that were so worded as to mislead the jury in the consideration of the case. In other words, the instructions given by the trial court were misleading and confusing, and in this situation the trial court properly granted a new trial.

The plaintiff complains of instruction No. 7 which contained the language "was only a payment for actual damages and did not include the payment of any sum for the injuries suffered" in referring to the pleadings, but that the trial court failed to instruct that the burden of proof required that the plaintiff prove that he was paid nothing for his injuries suffered, and if he sustained such proof he should recover.

The plaintiff complains of instruction No. 8, wherein

the trial court defined "fraud," "misrepresentation," and "adequate consideration," but failed to apply it to the theory of the issues involved, thus misleading and confusing the jury.

The plaintiff further complains that nowhere does an instruction appear, as to the law of the case, and as requested, in connection with evidence tending to show that the plaintiff was overreached, that the minds of the parties never met in the consummation of a valid agreement, or that the jury should consider the fact that the settlement allowed nothing for the injuries sustained.

Instruction No. 7 states: "You are hereby instructed that the defendant has alleged as a defense to this suit that a payment was made to the plaintiff and a release obtained from the plaintiff in full and complete settlement of the entire matter, and, in that connection, the plaintiff has by reply contended that the purported payment to the plaintiff, or release, was obtained from him by fraud and misrepresentation on which the plaintiff relied to his damage, and further that the said purported payment in addition to being based on fraud and misrepresentation was inadequate in that the sum of $34 and the endorsement of a check for $27.65 to the Methodist Hospital was only a payment for actual damages and did not include the payment of any sum for the injuries suffered.

"You are instructed in that connection that this places on the plaintiff the burden of proving by a clear preponderance of the evidence that said release was secured by fraud and misrepresentation on which the plaintiff relied to his damage, and that the purported payment did not compensate him adequately for the injuries suffered.

"In this case it is therefore your duty to first determine whether or not the plaintiff has sustained this burden of proof. The Court will amplify in other instructions the requirement imposed upon plaintiff with

regard to his sustaining the burden of proof in this case on the issue of fraud and misrepresentation.

"If the plaintiff has failed to establish the burden of proof with reference to the release by a clear preponderance of the evidence, or if the evidence thereon is evenly balanced, or preponderates in favor of the defendant, you are instructed to return a verdict for the defendant."

Instruction No. 8 properly defined the terms "fraud," "misrepresentation," and "adequate consideration."

Instruction No. 9 states: "The plaintiff in this case claims that the release signed by him on June 12, 1954 was obtained from him by a representative of defendant's insurance carrier by fraud. In this connection you are instructed that fraud is never presumed but must be proved by the one alleging it. The burden of proof in this case is upon the plaintiff to establish by a preponderance of the evidence that the release was obtained through fraud perpetrated by the defendant or his representatives in the payment for the same. To set aside a release and satisfaction for fraud the evidence and proof thereof must be clear and convincing. While fraud may be inferred from facts and circumstances, such inference must not be guesswork or conjecture, but must be the rational and logical deduction from the facts and circumstances. Evidence simply justifying or giving rise to a suspicion is not sufficient. To obtain redress or relief from the injurious consequences of deceit and fraud, it is necessary for the complaining party to prove (1) the representation; (2) the materiality of the facts represented; (3) the falsity of the representation; (4) plaintiff's ignorance of its falsity; (5) plaintiff's belief that it was true; (6) defendant's knowledge of its falsity, or his making of it, without knowledge, as a positive statement of a known fact; (7) defendant's intent that it should be acted upon; (8) plaintiff's right to rely on it; (9) plaintiff's reliance on it, and action upon it; (10) plaintiff's injury by reason

thereof; and (11) the amount of damage thus suffered.

"In this connection you are instructed that any fraud or misrepresentation of the agent of the insurance company is imputed to the defendant in this case. However, you are instructed that fraud will not be imputed where the facts and circumstances upon which the charge of fraud is based may be consistent with honesty of purpose. Therefore, in order for the plaintiff to set aside the release for fraud or misrepresentation, it is not only necessary that the plaintiff establish fraud by the defendant or his insurance carrier, but it is equally necessary that the plaintiff prove, so that it is made to appear directly and not merely by inference or conjecture, that he had a right to rely, and did rely, upon the representations made, and that he altered his condition in consequence thereof, and suffered damage thereby."

Instruction No. 10 states: "You are hereby instructed that the burden of proving by a preponderance of the evidence that the plaintiff suffered injuries clearly in excess of any that were contemplated by the parties when the settlement and release of liability were made is upon the plaintiff, and, if you find from the evidence by a preponderance thereof that the plaintiff suffered such injuries in excess of those contemplated, it is evidence that may be properly considered along with the other evidence and circumstances in the case, in determining the question of fraud and misrepresentation in the procurement of the settlement and release."

In instruction No. 12 the court informed the jury that if it found that the release in this case was obtained from the plaintiff by misrepresentation and fraud and was therefore void, then the jury was to proceed to consider the claim of the plaintiff against the defendant, and informed the jury that the burden of proof was upon the plaintiff to establish by a preponderance of the evidence the following propositions with reference to his claim against the defendant: "1- That the defendant was negligent in one or more of the particulars charged

against the defendant in Instruction No. 1; 2- That any such negligence was the proximate cause of the injury, pain, suffering and damage to the plaintiff; and 3- The nature and extent of such injury, pain, suffering and damage." The court further instructed the jury: "If the plaintiff has so proved all the foregoing numbered propositions by a preponderance of the evidence, then your verdict should be for the plaintiff and against the defendant. If, however, the plaintiff has failed to establish any one of the foregoing propositions by a preponderance of the evidence, or if the evidence thereon is evenly balanced, or preponderates in favor of the defendant, the plaintiff cannot recover on his claim against the defendant, and your verdict should be for the defendant."

In Benedict v. Eppley Hotel Co., *supra,* this court held: "In deciding whether or not there is error in a sentence or phase of an instruction it will be considered with the instruction of which it is a part and the remainder of the charge to the jury and the meaning thereof will be determined not from the sentence or phase alone but by consideration of all that is said upon the subject.

"Instructions to a jury should be considered as a whole and if they fairly submit the case that is all the law requires."

From an examination of the instructions we conclude that the instructions as a whole fairly state the law and the trial court did not commit prejudicial error in the giving of its instructions to the jury.

The plaintiff requested certain instructions which were refused by the trial court. The plaintiff specifically relied on requested instructions Nos. 5 and 6, which have been examined. We find no prejudicial error in the refusal to give the above-mentioned requested instructions. The subject matter contained therein is substantially set forth in the instructions given by the trial court.

"Errors sufficient to cause the granting of a new

trial must be errors prejudicial to the rights of the unsuccessful party." Vielehr v. Malone, 158 Neb. 436, 63 N. W. 2d 497.

` "When the evidence is conflicting, the verdict of the jury will not be set aside unless it is clearly wrong." Myers v. Platte Valley Public Power & Irr. Dist., 159 Neb. 493, 67 N. W. 2d 739.

For the reasons given herein, the order of the trial court in sustaining the plaintiff's motion for new trial and setting aside the verdict of the jury is reversed and the cause remanded with directions to the trial court to reinstate the verdict of the jury and to enter judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.