HARRY GRAVES, APPELLEE, v. RICHARD J. BEDNAR, APPPPELLANT.

107 N. W. 2d 12

Filed December 23, 1960. No. 34781.

500

*William P. Mueller* and *Kennedy, Holland, DeLacy & Svoboda*, for appellant.

*Theodore L. Kowalski* and *Wear, Boland, Mullin & Walsh*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Harry Graves, brought this action against defendant, Richard J. Bednar, seeking recovery of damages for personal injuries, hospital and medical expenses, and damages to his motorcycle alleged to have been proximately caused by specified negligence of defendant when his car and plaintiff's motorcycle collided at what is shown by the evidence to be the intersection of Dodge Street, herein called Dodge, and Happy Hollow Boulevard, herein called the Boulevard, in Omaha.

Defendant's answer denied that he was guilty of any negligence, and alleged that any injuries or damages suffered by plaintiff were the direct and proximate result of plaintiff's own specified negligence which caused or contributed to the accident. Defendant's prayer was for dismissal of plaintiff's action. Plaintiff's reply was in the nature of a general denial.

Upon trial to a jury, the parties each adduced evidence, and defendant's motion for directed verdict, together with plaintiff's motions to not submit the issue of plaintiff's alleged contributory negligence to the jury and to instruct that defendant was guilty of negligence

as a matter of law, and submit only the issue of damages, were overruled. Thereupon, the issues of negligence and contributory negligence were submitted to the jury and it returned a verdict for defendant. A judgment was rendered accordingly for defendant, and thereafter the court sustained plaintiff's motion for new trial and granted a new trial. Thereafter, defendant appealed, assigning and arguing that the trial court erred in granting a new trial because no error prejudicial to plaintiff occurred in the trial, and the record showed no legal reason for granting a new trial. We sustain defendant's assignment.

On the other hand, plaintiff's brief contended that the trial court properly granted a new trial for reasons, to wit: (1) That instruction No. 8 given by the court was erroneous because it improperly and incompletely advised the jury with relation to the duty of a left-turning driver in a heavily traveled intersection protected by traffic lights; (2) that for want of sufficient evidence, the court erred in submitting the issue of plaintiff's alleged contributory negligence to the jury; (3) that the court erred in submitting the issue of defendant's alleged negligence to the jury because the evidence disclosed that he was guilty of negligence as a matter of law; and (4) that the jury misinterpreted its duties and engaged in conjecture, speculation, and misconduct in reaching its verdict which denied plaintiff a fair and impartial trial. We do not sustain plaintiff's contention.

There are well-established, applicable rules of law which are controlling in cases such as that at bar. In that connection, as recently as Bryant v. Greene, 166 Neb. 520, 89 N. W. 2d 579, we reaffirmed that: "A new trial is to be granted for a legal cause and where it appears that a legal right has been invaded or denied. A new trial is not to be granted for arbitrary, vague, or fanciful reasons.

"Errors sufficient to cause the granting of a new trial

must be errors prejudicial to the rights of the unsuccessful party.

"Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured."

In Owen v. Moore, 166 Neb. 239, 88 N. W. 2d 768, we held: "In a case where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury."

In Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557, we held: "It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence.

"It is presumed in such an action that controverted facts were decided by the jury in favor of the successful party, and its finding based on conflicting evidence will not be disturbed unless clearly wrong."

In Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293, we held: "In determining the sufficiency of evidence to sustain a verdict it must be considered most favorably to the successful party, any controverted fact resolved in his favor, and he must have the benefit of inferences reasonably deducible from it."

In Griess v. Borchers, 161 Neb. 217, 72 N. W. 2d 820, we held: "Negligence is a question of fact and may be proved by circumstantial evidence. All the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of.

"One having the right-of-way may not on that account proceed with disregard of the surrounding circum-

stances, nor is he thereby relieved from the duty of exercising ordinary care to avoid accidents."

In Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854, we held: "A 'go' signal at a street intersection confers no authority on the driver of an automobile who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated.

"A motor vehicle having started to cross an intersecting street in accordance with the signal light is ordinarily entitled to complete the crossing notwithstanding a change in lights.

"A vehicle entering a street intersection with a traffic light in his favor is under obligation to use due care and to yield the right-of-way to vehicles in the intersection. His right-of-way is subject to the rights of those already in the intersection."

In Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352, we held: "All travelers are required to exercise due care in coming to and crossing an intersection of public highways."

In Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758, we held: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing.

"Instructions to a jury must be considered together, so that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof.

"Instructions must be considered and construed together, and if they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission, and, unless

this is done, the judgment will not ordinarily be reversed for such defects."

As held in Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913: "The meaning of an instruction, not the phraseology, is the important consideration, and prejudice will not be found when the meaning thereof is reasonably clear.

"Instructions should be considered as a whole, and if they fairly submit the case the verdict of the jury will not be set aside."

In Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 146 Neb. 47, 18 N. W. 2d 551, we held: "Where instructions as a whole correctly state the law applicable to the controverted issues, the verdict of the jury, if supported by sufficient evidence, will not be set aside because particular instructions, considered separately, contain mere informalities or omissions which are not misleading or confusing."

In the light of such rules and others hereinafter cited, we have searched the record and examined the trial court's instructions. As far as important here, we summarize the relevant and material evidence as follows: Dodge is a brick-paved street, 42-feet wide, and has four marked lanes of travel, with two on the south for eastbound traffic and two on the north for westbound traffic. Dodge is intersected by the Boulevard in a channelized and oblongated east and west manner about four blocks west of Fifty-second Street, from which point there is a downgrade of about 3 or 4 percent to such intersection, and an upgrade therefrom toward the west. The Boulevard runs northeasterly from Dodge and has two separately-divided but merging 30-foot paved streets, with one on the east and one on the west, separated by a 92.2-foot triangular island extending east and west along the north curb on Dodge and on to the north point of merging in the Boulevard. At the time in question, such 30-foot streets were each respectively used for entry to and exit from the Boulevard. There were

four operating traffic lights at the intersection. One was located at the southwest corner of the island on the north side of Dodge and at the east side of the west 30-foot street; one was located directly west across such street and on the north side of Dodge; one was located a short distance west of midway across from the island on the south side of Dodge; and one was located some distance west thereof, on the south side of Dodge.

A few moments before 8 a. m. on October 6, 1953, plaintiff was riding his motorcycle west in the outer or north traffic lane on Dodge down the slope from Fifty-second Street to the intersection and to the point of accident in the intersection. He was due at work near Seventy-second Street at 8 a. m., but claims that he was traveling at only 20 to 25 miles an hour, although there is evidence that his speed was from 25 to 30 miles an hour. No vehicles were ahead of plaintiff in his lane of travel. Several cars traveling west on the inner lane of Dodge and to plaintiff's left were slowing down or stopping for red traffic lights, which cars somewhat obstructed plaintiff's view of the intersection, and he testified that as he passed said cars he looked but did not see defendant's car turning left in the intersection until about 15 to 18 feet before colliding with it. In the meantime, the head car traveling west on the inner lane of Dodge had stopped for red traffic lights. The driver of such vehicle, known as the Carter car, turned on his car blinker lights for a left turn south, and when green signal lights appeared, he moved up a few feet and stopped again to permit defendant and eastbound traffic on his left to clear the intersection. Plaintiff testified that he first saw defendant's car as it came across to the north in front of the Carter car without stopping or changing its direction, and plaintiff then applied his brakes and turned left, but was unable to avoid collision.

On the other hand, defendant was due to attend a law class at Creighton University, at 8 a. m., and he

testified that after driving his car east on the inner traffic lane of Dodge, he stopped for red traffic lights and turned on his car blinker lights for a left turn north. Thereafter, he looked east up the slope, and seeing no traffic in the north lane of Dodge, he followed the green traffic lights left at about 5 to 8 miles an hour, which speed is undisputed, across the intersection of Dodge and beyond the center thereof toward the east lane of the west 30-foot street entrance to the Boulevard. In doing so, he turned left a few feet west of the Carter car which had stopped and indicated its intention to turn left toward the south. Such car temporarily obstructed defendant's view to the east, and defendant claimed that he looked but did not see or hear plaintiff's motorcycle until just before the collision. There is evidence that the accident occurred in the east traffic lane extending northeast toward the Boulevard, and the north outer traffic lane of Dodge in the intersection where the front of plaintiff's motorcycle and the right rear fender and wheel of defendant's car collided, and the side of plaintiff's motorcycle slid around into the right side of defendant's car. Defendant testified that the front of his car was beyond the north traffic lane of Dodge when the accident occurred, and that in the afternoon, after the accident, he visited with plaintiff at the hospital where plaintiff said that he wasn't sure how the accident happened but that he saw defendant indicating that he was going to make a left turn, but plaintiff thought that without slowing down his motorcycle defendant would be out of the intersection before plaintiff's machine got there. Another witness for defendant testified that he was with defendant when plaintiff and defendant talked about the accident, but such witness could not recall just what the conversation was. In that connection, plaintiff testified that he had no recollection of defendant's visit at the hospital or the making of any such statements to defendant. Concededly, neither party sounded his horn before the accident.

Instruction No. 1, given by the trial court, summarized and paraphrased all of the material allegations of plaintiff's petition, and no complaint thereof as such is made by plaintiff. That instruction stated in substance plaintiff's allegations that on October 6, 1953, he was proceeding west on Dodge while operating a motorcycle, when defendant, driving a car east on Dodge, turned left across the intersection of Dodge with the Boulevard and directly in front of plaintiff's motorcycle, causing a collision. Plaintiff's theory of recovery and his claimed negligence of defendant, which was alleged to have proximately caused the accident and plaintiff's injuries and damages, was set forth fully and at length in seven separate enumerated paragraphs of the instruction. To recite them herein at length would serve no useful purpose.

Instruction No. 2, given by the trial court, summarized and paraphrased the material allegations of defendant's answer, and no complaint thereof as such is made by plaintiff. It stated in substance that defendant admitted plaintiff was operating a motorcycle and defendant was operating a car at such time and place; that Dodge runs east and west and is intersected by the Boulevard which crosses Dodge; and that such intersection was protected by operating traffic lights on the morning of the accident. Defendant alleged that he had come from the west on Dodge in the inner lane, next to the center, intending to turn north on the Boulevard; that as he came to the intersection, the traffic lights were red against him, and he stopped, headed east in the inner lane; that he then turned on his car blinker lights indicating his intention of turning left to the north; that on the east side of such intersection there were a number of cars headed west in the inner lane next to the center of Dodge, which were likewise stopped by the red traffic lights against them; that the westernmost car in such lane had its blinker lights on, indicating its intention to make a left turn to the south; that when the traffic

lights turned green, defendant moved ahead and turned left to go north; that the car opposite defendant from the east moved ahead, then paused to allow defendant to proceed north; and that having passed the inner lane of westbound traffic on Dodge and almost through the outer lane going north into the Boulevard, plaintiff ran into the side of defendant's car. Defendant then denied all allegations of plaintiff's petition not admitted, and denied that he was guilty of any negligence, but alleged that any injuries and damages suffered by plaintiff were the proximate result of plaintiff's own negligence which caused or contributed to the accident. In that connection, defendant's claimed negligence of plaintiff, which was alleged to have proximately caused the accident and plaintiff's injuries and damages, was set forth fully and at length in five separate enumerated paragraphs of the instruction. To recite them herein would serve no useful purpose.

The evidence adduced by the parties is too voluminous to set forth at length here in more detail than we have already done. We deem it sufficient to say that there was competent evidence respectively adduced by the parties sufficient to support the allegations of plaintiff's petition and defendant's answer heretofore mentioned, and that the evidence was either conflicting in material respects or was such that reasonable minds could draw different conclusions or inferences therefrom with regard to the respective allegations of negligence and contributory negligence which required the submission of such issues to the jury, as was properly done by the trial court. We therefore do not conclude, as a matter of law, that plaintiff was guilty of contributory negligence more than slight as argued by defendant, or that defendant was guilty of negligence as a matter of law, as argued by plaintiff.

With regard to instructions given, plaintiff simply contended that the trial court erred in giving instruction No. 8 for reasons heretofore recited, which allegedly

justified the granting of a new trial. We do not agree that such instruction was erroneous as claimed by plaintiff, who offered no requests for instructions, and in his brief admits that instruction No. 8 was "correct as far" as it went, but that it was "not complete." In that connection, instruction No. 8 simply advised the jury at length and properly with regard to the applicable provisions of ordinances of the city of Omaha received in evidence, and the applicable statutes of this state. Such instruction is too verbose to recite here at length. It is sufficient to say that it fully and fairly advised the jury with respect to the material applicable ordinances and statutory duties therein required of every motorist who operates a motor vehicle on the streets and highways of the city of Omaha and this state, and included in said instruction were all of the material and applicable limitations and qualifications contained in said ordinances and statutes. Of course, under the circumstances presented herein, such instruction did not include and was not required to include all the law of the case, because, as heretofore pointed out, all instructions given are required to be considered in determining whether instruction No. 8 was erroneous as claimed by plaintiff.

As heretofore pointed out, instruction No. 1 advised the jury at length the manner in which plaintiff claimed defendant was negligent, and instruction No. 2 advised the jury at length the manner in which defendant claimed plaintiff was negligent. Instruction No. 4 properly placed the burden of proof upon plaintiff with respect to defendant's alleged negligence, and instruction No. 5 properly placed the qualified burden of proof upon defendant with respect to plaintiff's alleged negligence. Instruction No. 7 advised the jury that both parties were required to see what was in plain sight, and that the fact that either one may not have seen the other if, in the exercise of ordinary care under the circumstances the other could have been seen, would

not excuse such driver from fault in not having seen the other. Instruction No. 9 informed the jury that a green light was not a command to go, but gave permission to proceed if, in the exercise of ordinary care, under all the particular circumstances and surroundings, an ordinarily prudent man exercising ordinary care would feel secure in doing so. Instruction No. 10 advised the jury that: "The statute giving to defendant the right-of-way after giving a lawful signal for a left turn and permitting defendant to proceed is subject to the condition that an ordinary prudent man exercising ordinary care would so proceed. To determine whether defendant under the conditions exercised ordinary care you should consider that after making the turn he was then facing a red light; what the plaintiff could reasonably expect in the way of intersecting travel on a highway of the character of Dodge Street at the place of the accident, and all other facts and circumstances in evidence." Instruction No. 11 advised the jury that: "In determining whether or not either driver exercised ordinary care under the circumstances there should be considered; the character of the road, the traffic thereon, the fact that it was a four-lane highway, that it was of an interstate character and heavily traveled, and what an ordinary prudent man exercising that degree of care would have done, and all other facts and circumstances in evidence."

No complaint is made here of any instructions as such except No. 8, and we conclude that the aforesaid instructions, including instruction No. 8, were in no manner prejudicially erroneous, but were in fact all-inclusive of the very theory upon which plaintiff sought recovery.

We turn finally to plaintiff's contention that a new trial was justified for misconduct of the jury in reaching a verdict by conjecture and speculation. We do not agree. That contention arose out of the fact that after

the jury had retired to deliberate, it submitted a written request to the court as follows: "To Judge Thomsen. Testimony of Graves. Did Graves see Bednars car before he entered the intersection and figure he had enough time without reducing his speed for Bednar to complete his turn."

In that connection, after receipt of such request, the official court reporter read to the court, and the court decided, what portions of Graves' testimony he believed to be in point. Thereafter, counsel for the parties, as requested by the court, returned to the courtroom where, in absence of the jury, counsel for defendant requested the court to include in the testimony to be read to the jury the portion of defendant's testimony relating to plaintiff's conversation with defendant at the hospital the afternoon following the accident, which we have heretofore pointed out and which could have affirmatively assisted the jury in answering its request. Upon objection thereto by plaintiff's counsel, defendant's request was denied, and the court said: "I will have the reporter read the testimony of Mr. Graves both on direct examination and cross examination on this point." Thereupon, the jury returned to the courtroom and, as directed by the court, the court reporter read the testimony of plaintiff given "both on direct examination and cross examination upon this question," which had theretofore been submitted by the jury. With regard thereto, the record discloses that plaintiff's counsel never objected to the proposed reading of plaintiff's testimony, or to the portions thereof which were read. As a matter of fact, after such testimony had been read, plaintiff's counsel suggested, in order to have no misunderstanding, that if defendant's counsel desired a reading to the jury of any other portions of plaintiff's testimony after checking the same with the court reporter, he, plaintiff's counsel, would have no objection to doing so, even "out of my presence if he feels he overlooked anything." Other portions of plaintiff's tes-

timony were not read, and the jury retired again for deliberation, as directed by the court.

In such respect, we conclude that the trial court complied with section 25-1116, R. R. S. 1943, in every material manner, and did so as requested by plaintiff's counsel, without any error prejudicial to plaintiff.

In Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407, this court held: "The reading by the official reporter of the testimony of a witness examined on the trial is certainly within the spirit if not within the letter of section 25-1116, R. R. S. 1943, since the stenographic reporter's notes of the testimony are liable to be more accurate than the judge's recollection of what was testified to."

As held in Pope v. Tapelt, 155 Neb. 10, 50 N. W. 2d 352: "Proof of misconduct on the part of a jury to avoid a verdict must be of such a character that prejudice may be presumed. Evidence of misconduct which is to the advantage of the party complaining does not afford a basis for a new trial." We decide that plaintiff's contention with regard to claimed misconduct of the jury in arriving at its verdict has no merit.

We conclude that the trial court erred in sustaining plaintiff's motion for new trial and in the granting of a new trial, and that the order so doing should be and hereby is reversed and the cause is remanded with directions to reinstate the verdict of the jury and the judgment rendered thereon in favor of the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.